### JAMES MASON *v.* JOHN MASON's Executors and others.

A testator having three sons and four daughters living, and six grandchildren the issue of a deceased daughter and of her husband, G., by his will gave to three of his daughters each one-fourth of his real and personal estate absolutely, and another fourth to G. and his children ; and then devised and bequeathed the remaining half of his estate to his executors, in trust to rent, invest and improve the same, and receive and collect the rents and income, and out of the income, to pay yearly annuities, (unequal in amount, but each considerably less than one-eighth of the income,) to each of his three sons, J., H. and M. and to his daughter H. A. The latter was to cease on her surviving her husband, and she was then to take one-fourth of the half absolu·ely ; and if her husband survived her, her annuity was to continue to him for life, and the eighth of the estate subject to that annuity, was to vest in her issue by representation. On the death of the sons J. or H. leaving a widow, she was to have the annuity of her husband, during her life. The trustees were clothed with a discretionary power to increase the annuities of the respective sons, and the daughter H. A., during their lives. If the net income of the trust fund exceeded the annuities, the surplus as to three-fourths accruing after a month from the testator's death, was to accumulate equally for the benefit of the issue of J., H., and H. A. respectively during their minorities, and to be paid to them respectively at twenty-one. So long as either of those three were without issue, the surplus of the income of their trust shares, after satisfying the annuities to them or the husband or widows, as the case might be ; was to be paid to the three other daughters, and to the issue of H. A., to G., and to the issue of H. and J., if either had any ; all taking *per stirpes*. On the death of M., who it was supposed would never have issue, the testator gave one-fourth of the trust fund, to the same devisees as last above expressed ; and the surplus income of that fourth while he lived, was to go to the same persons and classes.

On the death of J. and H. respectively, other two fourth parts of the trust fund were given to their respective issue, subject to the respective annuities to their widows. But if either of those sons left no issue, the respective fourth parts, subject to the widow's annuities, were given to the three daughters first named, to G. or his issue, to H. A. or her issue, and to the issue of either J. or H. if any there were ; all bestowed *per stirpes*.

*Held*, on the construction of the will, that the devise in trust of the half of the estate, was to be construed and taken as a devise of separate and distinct shares, each consisting of one-fourth part of such half, on distinct trusts in respect of each; and that the power of alienation was not suspended as to any portion of the es-

Mason v. Mason's Executors.

tate, beyond two specified lives in being at the death of the testator; and that there was no absolute suspension for a month, or for any designated period.

The annuities to the two sons and the daughter, are not a joint charge upon the three-fourths of the trust fund; but each is a separate charge on the respective fourth parts given in trust.

*Held also,* that the trusts for the accumulation of the surplus income of the respective shares were valid. As to all the beneficiaries, the accumulations were to commence within two lives in being at the death of the testator; during the minority of the respective beneficiaries: and were to terminate as to each when he became of age.

It is a sufficient compliance with the provisions of the revised statutes as to such accumulations, if the persons for whom the same are intended, are designated or described as a class, *e. g.* as the children of a person named.

Where such a class is designated, it is not essential that all should be living when the accumulation commences; provided at the commencement it goes for the benefit of such as are *in esse* exclusively, and that those who subsequently become entitled fall within the prescribed rules laid down by the statute.

Such a succession of accumulations, is not objectionable, if they are all made to terminate within the prescribed limits as to time in respect of the suspense of the power of alienation.

*Held also,* that a devise in trust for the payment of annuities out of the income of real estate, is valid.

Words in a will importing a joint bequest or a union of interests, construed as bestowing separate and distinct shares and interests, from the nature of the things given, and the directions as to their disposition and enjoyment.

So words in the conjunctive, will be construed disjunctively and as distributive, when the intent of the testator requires it.

In the construction of a will, the extent and situation of the property, is a proper extrinsic circumstance to be considered in ascertaining the intent and object of the testator.

Where there is a devise and bequest to trustees, one of whom is to take a beneficial interest in the trust property, he takes a legal estate to the extent of such interest.

Oct. 10, 11, 1844, and Feb. 25, March 18, 1845; Decided April 3, 1845.

The questions in this cause arose upon the will of John Mason, who died in the city of New York, on the 26th day of September, 1839. The will was in these words, viz:

" In the name of God, Amen—I, John Mason, of the city of New York, gentleman, being of a sound and disposing mind, memory and understanding, do, in and by these presents, make, execute, and publish my last will and testament as follows, that is to say:—

" First, I order and direct all my just debts, funeral expenses,

and testamentary charges to be paid as soon after my decease as may be conveniently done.

"Second, I give, devise, and bequeath unto my beloved daughter, Mary Jones, the wife of Isaac Jones, and to her heirs, executors, administrators, and assigns for ever, the one equal undivided eighth part of all my property and estate both real and personal whatsoever.

"Third, I give, devise, and bequeath unto my beloved daughter, Rebecca Jones, the widow of Isaac C. Jones, deceased, and to her heirs, executors, administrators and assigns forever, one other equal undivided eighth part of all my property and estate both real and personal whatsoever.

"Fourth, I do give, devise, and bequeath unto George Jones, the husband of my deceased beloved daughter Serena, and to her children by him, and to their respective heirs, executors, administrators, and assigns for ever, one other equal undivided eighth part of all my property and estate both real and personal, whatsoever.

"The share, estate, and interest of the said George Jones in the said last mentioned eighth part to be the same in right of his said deceased wife as if she were now living and should survive me, to the end that he may not be prejudiced by her death before me, touching her share and portion in my estate and property, either real or personal, the said children taking under this my will, their respective shares, estates and interest in the real estate of the said last mentioned eighth part only after the death of their said father, equally, or share and share alike.

"Fifth, I give, devise, and bequeath unto my beloved daughter, Sarah Jones Hamersley, the wife of Andrew Gordon Hamersley, and to her heirs, executors, administrators and assigns for ever, one other equal undivided eighth part of all my property and estate both real and personal whatsoever.

"Sixth, The remaining one equal undivided half part of all my property and estate, both real and personal whatsoever, I give, devise, and bequeath unto the said Isaac Jones, George Jones, and Andrew Gordon Hamersley, and the survivors and survivor of them, their and his heirs, executors, administrators

and assigns, for ever, in trust for the following uses and purposes, that is to say:

"To rent, invest and improve the same, at their and his best discretion, and collect and receive the rents, issues, profits, interest, dividends, or other income thereof, and by and out of such income, or so much thereof as may be necessary for that purpose, to pay the following annuities, that is to say:

"To my beloved daughter, Helen Alston, the wife of Joseph Alston of South Carolina, for her own separate use and benefit, and into her own hands, and upon her own receipt, or to her own written order, to be given by her from time to time as such payments shall be made, and not by way of anticipation, a clear annual annuity of three thousand dollars a year;

"Also, to my beloved son, John Mason, Junior, a clear annual annuity of two thousand dollars a year;

"Also, to my beloved son, James Mason, a clear annual annuity of two thousand five hundred dollars a year;

"And, also, to my beloved son, Henry Mason, a clear annual annuity of two thousand five hundred dollars a year.

"Each of the said four annuities to be paid in two equal instalments a year, at the end of every six calendar months from and after my decease, and to continue during the respective lifetimes of the before named four annuitants, with the exception of the said Helen Alston, whose annuity shall cease when and if she survive her said husband, and she shall thereupon become entitled, and I hereby in that event give, devise and bequeath to her and to her heirs, executors, administrators and assigns, for ever, the one equal undivided fourth part of the said half part of my property and estate, both real and personal.

"But should her said husband survive her, then from and after her decease, I hereby order and direct the said annuity of three thousand dollars a year, to be paid to him in like semi-annual instalments for and during the residue of his natural life.

"And upon the decease of the said Helen Alston, should she die in the lifetime of her said husband, I hereby give, devise, and bequeath the said last mentioned one equal undivided fourth part, of the said half part of my property and estate, both real

and personal, subject to the said annuity to her surviving hus-- band, to her child or children, or other issue, and his, her, or their respective heirs, executors, administrators and assigns for ever, share and share alike; such other issue taking by representation and not *per capita*.

"And with regard to my said two sons, James Mason and Henry Mason, should they or either of them die leaving a widow surviving them or him, such widow or widows shall be entitled to, and I hereby give and bequeath to her or them respectively, the same annuity of two thousand five hundred dollars a year, to be paid to her or them respectively, in like semi-annual instalments, during the residue of her or their several natural life or lives.

" And I do hereby give to the before named trustees and the survivors and survivor of them, full discretionary power to increase the said annuities respectively, during the lifetimes of my said daughter Helen Alston, and my said three sons, John Mason, Junior, James Mason, and Henry Mason, but not after their respective deaths.

" And should the clear net income of the said trust fund exceed the said annuities, the surplus in regard to the three equal fourth parts thereof accruing after one month from my death, is to accumulate equally for the benefit of the children or other issue of the said Helen Alston, and James Mason and Henry Mason respectively, during their respective minorities, and to be paid to them respectively as they shall severally attain the age of twenty-one years, such children or other issue taking their respective shares thereof by representation and not *per capita*.

"And with regard to the said trust shares of the said Helen Alston, James Mason and Henry Mason, so long as they may severally be without issue living, the surplus of the said income thereof accruing as aforesaid from one month after my death, after satisfying the said annuities to them, or to the surviving husband of the said Helen Alston, and the surviving widows of the said James Mason and Henry Mason, shall be paid from time to time to the said Mary Jones, Rebecca Jones, George Jones, if he be living, or to his children by my said deceased daughter, if he be dead, the said Sarah Jones Hamersley, and the

said Helen Alston, should her said husband be then deceased and she survive him, or to her issue if she and her said husband be both living, and she have issue living, and to the issue of either of my said sons James Mason and Henry Mason, who may have issue, equally, or share and share alike, such issue in each instance taking by representation and not *per capita*.

"And upon the decease of my said son John Mason, Junior, who is unmarried, and from his bodily and mental infirmities, in all human probability never will be married, I give, devise and bequeath the one equal fourth part of the said remaining half part of my property and estate, both real and personal, together, in the meantime, that is to say, during his lifetime, and the surplus of income thereof, after satisfying the said annuity to him, to the several persons, and for the several estates, and upon the several *contingences* herein lastly above specified.

"And upon the deaths of the said James Mason and Henry Mason respectively, I give, devise and bequeath the two equal fourth parts of the said remaining half part of my property and estate, both real and personal, to their respective issue, such issue taking share and share alike, by representation, and not *per capita*, subject to the said annuities, to the widows of my last named two sons, should such widows survive them.

"But should my said last named two sons, or either of them, die without leaving any issue them or him surviving, then I give, devise and bequeath the said last mentioned two equal fourth parts or one equal fourth part of the said remaining half part of my said property and estate, both real and personal as the case may be, subject to the said last mentioned annuities, to the said Mary Jones; Rebecca Jones; George Jones, if he be then living, or if then dead, to the children of my said daughter Serena; Helen Alston, if she shall have survived her said husbond, and if not, then to her issne; the said Sarah Jones Hamersley; and the issue of either of my last mentioned two sons who may have left issue; equally, share and share alike, the issue or children in either case taking by representation and not *per capita*.

"Lastly, I do hereby nominate, constitute and appoint the said Isaac Jones, George Jones, and Andrew Gordon Hamersley,

exccutors, and my said two daughters, Mary Jones and Rebecca Jones, executrixes of this my last will and testament, hereby giving them power and authority at their discretion, to sell and convey all or any part or parts of my real estate. And I hereby revoke every former will by me executed.

"In witness whereof, I have to these presents set my hand and seal, this twenty-sixth day of September, in the year of our Lord one thousand eight hundred and thirty-nine.

JOHN MASON, (L. S.)

"Signed by the testator, at the end hereof and by him sealed, executed, published, and declared as and for his last will and testament in our presence, who in his presence, and at his request and in the presence of each other, have hereto subscribed our respective names as attesting witnesses, adding to our respective names our places of residence, the day and year lastly above written. FRANCIS E. BERGER, 68 Warren-street; GEORGE W. STRONG, No. 109 Greenwich-street, city of New York."

The complainant was one of the sons of the testator named in the will. In his bill filed March 24, 1840, he stated that the executors proved the will and obtained letters testamentary. That a large portion of the real estate was demised at the death of the testator, but the complainant was ignorant of the particulars and required a discovery. That the devise of the testator both as to his real and personal estate, was utterly null and void and of no legal effect or validity, and the complainant upon his death became seised of one-eighth of the real estate as tenant in common and entitled to one-eighth of the rents of such as was demised. That the other heirs or some of them have received the whole rents, and he has called on them for an account and payment.

The bill prayed that the devises and bequests of the will might be declared void, and the complainant's title established, and for an account of the rents received. Also that the true construction of the will might be declared and determined by the court.

The parties defendant in the suit, were the three executors, the six children of the testator named in the will as being then alive, Joseph Alston also named in the will and his infant son, the wife of Henry Mason and his infant daughter, the wife of

the complainant, and the six children of Serena Jones the deceased daughter of the testator.

The executors, with the parties who took absolute vested interests under the will, put in answers, insisting on its validity in every particular. The executors stated that under the discretionary power in the will they had increased the annuities to one-eighth of the net income.

It appeared that the personal effects of the testator were inventoried at five hundred and sixty-six thousand five hundred and thirty-eight dollars; and that his real estate was worth about half a million of dollars. It also was stated at the hearing, that the executors during the progress of the suit, had reduced the annuities payable to the sons and Mrs. Alston to the sums specified in the will.

*James J. Ring*, for the complainant.

The testator has devised one-eighth of his estate to each of his four daughters first named, including the husband and children of Serena Jones, absolutely. The second division of the will consists of a devise of one-half of his whole estate to three executors as trustees, upon certain trusts which present the questions now at issue.

We contend that this devise to the trustees is void, both as to the real and the personal estate.

I. The directions to pay annuities out of the rents and profits of the trust property does not support the devise.

1. The trust to pay annuities, a fixed annual sum, out of rents and profits, is not a purpose enumerated in part 2, chapter first, article 2, title 2d, of the revised statutes.

It is not a trust for alienation.

It is not an application of rents and profits or any specific part of them, but is a charge upon them.

The payment of a gross sum to an annuitant is not an application to his use.

2. Such devise would vest the whole estate in fee in the trustees under the sixtieth section of the title relative to Uses and Trusts; no matter what were the disproportion between the annuity and the yearly value of the land; or,

3. It renders it impossible to determine what proportion of the estate is left in the grantee or his heirs which is not necessary for the purposes of the trust. (See § 62 of same title.)

II. The power to enlarge the annuities will not support the trust, as the enlarged amounts are merely substituted for the original.

III. The attempted disposition of the residue of the rents and profits will not support the devise.

I. The provision for accumulation is void.

*First*, for uncertainty of what is to accumulate and of the persons to take; and *secondly*, for too long postponement of the commencement.

2. The provisions for the distribution of some portion of the income during the time Mrs. Alston, James and Henry are without issue, is void.

*First*, for uncertainty as to what is to be paid, and the persons to take, and as to the contingency authorizing the payment.

*Secondly*, being for the benefit of issue not in existence at its creation, it cannot be determined who is to take.

3. The trustees are also *cestuis que trust*, under the devise.

4. The devise of one-fourth of the one-half, on the death of John Mason, Junior, is void for uncertainty and incomprehensibility.

5. The devise of two-fourths of one-half, on the deaths of James and Henry to their issue is void.

*First*, no provisions are made for the estate between their deaths respectively.

*Secondly*, it is contradicted by the next clause of the will.

*Thirdly*, it is part of a general purpose which has failed.

6. The devise on the death of either of those sons without issue, is void.

*First*, for uncertainty as to what passes, whether one or two-fourths; and the persons to take.

*Secondly*, as being part of a general purpose which has failed.

*Thirdly*, Because of its contradicting immediately, the preceding provisions.

IV. The complainant, James Mason, takes one-eighth of the testator's real and personal estate as heir at law.

V. At all events, the trustees having increased the annuities to the complainant to the extent of one-eighth of all the income of said trust fund, he is entitled to a decree for the payment of the enlarged annuity. The trustees have no right to diminish it, after once enlarging it. The testator did not intend to place his sons in such a state of vassalage as would result from a different construction.

The counsel cited *Coster* v. *Lorillard*, 14 Wend. 265, 331, 333, 352; *Hawley* v. *James*, 16 ibid. 61, 161, 173; *Stuyvesant* v. *Salmon*, 16 ibid. 321; 1 Rev. Stat. 728, 729, § 55, 57, 60, 62, 63; *Wilson* v. *Piggott*, 2 Ves. jr. 351; *Fortescue* v. *Gregor*, 5 ibid. 553.

*B. Robinson*, for Mr. and Mrs. Alston concurred in the grounds taken by the complainant.

*J. V. L. Pruyn* and *J. C. Spencer*, for Henry Mason.

I. The devise of one-half of the testator's estate in trust to pay annuities to more than two persons during their lives, suspends the power of alienation for more than two lives in being, and is void.

Here there are *four* annuitants in the first instance, absolutely. If Mr. Alston survives his wife, then the annuity continues to him during life, and the widows of James and Henry, are also contingently entitled to annuities on the death of their husbands.

The devise is *of the whole* of this half of the estate, in trust to pay the different annuities. It is a joint devise, and not of several portions of the several annuities, so that if the gross income should be less than $10,000 in any one year, a proportionate abatement must be made in each annuity. They are each and all charged upon the whole estate. By section 36, tit. 2, chap. 1, part 2, of the revised statutes, dispositions of the rents and profits of lands, are to be governed by the rules in that article relative to future estates in lands.

By section 15 same title, the absolute power of alienation shall not be suspended by any limitation *or condition* for a longer period than two lives in being at the creation of the estate.

And by section 14 of the same title, any estate by which such a suspension is caused, shall be void in its creation.

By section 1 of tit. 4, chap. 4, part 2, of the revised statutes, the absolute ownership of personal property, shall not be suspended by any limitation *or condition* whatever for a longer period than two lives in being.

And by section 2, in all other respects limitations of future interests in personal property, are subject to the rules prescribed in chap. 1, part 2, respecting future estates in land. See *Van Vechten* v. *Van Veghten*, (8 Paige, 128,) that the effect of this clause is to render void an estate or interest in personal property by which an illegal suspension is created.

Upon the subject that this devise creates a *joint charge* upon the whole fund, I can add nothing to what has already been said, except to refer to and adopt the remarks of Senator Maison, in the case of *Hawley* v. *James*, (16 Wendell, 258.)

This joint charge renders the principal of the fund inalienable during the lives of the four annuitants.

1. The annuitants cannot alienate their interest. The 63 section of the same title 2, declares that "no person beneficially interested in a trust for the receipt of rents and profits, can assign, or in any manner dispose of such interest."

Here is a clear trust to receive rents and profits. There is no vestige of an authority in this will to sell, or to lease or mortgage lands to pay charges.

On this subject, I refer to and adopt the remarks of Justice Bronson, in 16 Wendell, 161, beginning, "There is still another reason," &c., and also at p. 165, the remarks also of Ch. J. Nelson, p. 117, beginning "The trust to pay annuities," &c.

That the annuity is not a sum in gross, in addition to what J. Bronson says at p. 165, I refer to and adopt the remarks of Senator Maison, at p. 262, beginning "We now come to the 63d section," &c.

These annuities are *several* sums payable every six months, and not a sum in gross.

They are uncertain in amount, the trustees having a discretion to increase them.

If the case of *Hallet* v. *Thompson*, (5 Paige, 585,) is relied upon,

to show that the interest of the annuitants is assignable, I refer to and adopt the conclusive argument of Senator Maison, beginning at p. 260 of 16 Wendell, beginning " Such would be precisely the case," &c.

I add the following remarks: It may be seriously questioned whether the devise in *Hallet* v. *Thompson,* was not a gross sum of $4000, since Thompson could render it *gross* by calling for it at any time.

Again, the Chancellor in that case considered that the income of the $4000 was not intended for the support of Mr. Thompson.

In this case, the annuities are clearly for that purpose.

The case therefore, is not strictly applicable to the questions arising under this devise.

If it be applicable to a *trust* to receive rents and profits under sub. 3 of sec. 55 of tit. 2, then it is overruled by the opinions before quoted in 16 Wendell, and the decision of the Court of Errors, in *Coster* v. *Lorillard,* 14 Wendell, see p. 329, opinion of Ch. J. Savage, and the decree of the court by which the annuities were set aside, which were drawn in question. And in fact, it is virtually overruled by the Chancellor in *Van Eps* v. *Van Eps,* (9 Paige, 240.)

The decision in James's case, p. 275, which saved the annuities, devised a mode of doing so, which exonerated the estate from the charge at once. This was done under the peculiar language of the will, see Senator Maison's opinion, p. 256, and at p. 259, and because all the parties and their counsel were desirous that these small annuities, out of such a large estate, should be paid ; and every one, instead of making an objection, lent his aid to give them effect. The court could not have directed the purchase of an annuity, or the leasing of lands, to produce one, if they had not supposed the will contained such a power to the trustees. Whether it did in fact, give such a power, is not so material. If the court mistook the fact, it does not vary the principle on which they proceeded.

We are therefore led to the next question in order.

2. That by the 65th section of title 2, the trustees have no power to alien any part of the estate. In this will there is no indication of any authority to dispose of any part of the half, and

there are no words by which such implication can possibly arise. There is no direction to "secure" the annuities, or any thing of the kind.

Any alienation of the estate or any portion of it, by the trustees, would therefore be in "contravention of the trust."

And even if the interest of the annuitants be assignable, yet the trust term must be maintained to pay over the annuities to the assignees.

The possibility that the annuitants might release and extin-·guish their claim, cannot relate back to render valid the creation of the estate.

There is a possibility also, that they will not release, and therefore hold on to their annuities as long as may be, and this very possibility, that the trust term may continue more than two lives in being, renders it void. See remark and quotation of Ch. J. Nelson, p. 121, 16 Wendell, second line from the top.

Upon the point now mentioned, I refer to the remarks of Ch. J. Nelson, p. 122, of 16 Wendell, beginning, "Even if we should concede," &c.

And in reference to this whole point, the decision in *Van Vechten* v. *Van Veghten*, (8 Paige, 104,) in respect to the house and lot in Market-street, is directly applicable, and is conclusive.

II. The trust for accumulation of three-fourths of the one-half of the estate for the benefit of unborn children, is at least questionable. I do ·not propose to argue it at length ; indeed I do not find that the point has been the subject of adjudication.

The question is whether under the 2d subdivision of section 37 of title 2, chap. 1, and under the 2d subdivision of section 3 of title 4, chap. 4, part 2, " the persons" during whose minority the accumulation must commence, and at the expiration of which it must terminate, must not be named—specified ?

III. The suspension for *one month* after the death of the testator, is void. The settled construction of the revised statutes is that the suspension cannot be for any definite time, long or short, but must be determinable upon lives in being. It is only necessary to refer to the case of *Hone's Executors* v. *Van Schaick*, (20 Wendell, 565,) and to *Irving* v. *De Kay*, (9 Wendell, 527,) to show that such is the settled law.   .

IV. If the devises of the will are void in part, so that the whole intention of the testator cannot be executed, the whole will becomes inoperative, as otherwise there will be an unequal distribution of the estate among the testator's children, contrary to his evident intention. This proposition is not in conflict with the opinion of the Chancellor in *Irving* v. *De Kay*, in 9 Paige, 526. That opinion is, " that *any* legal trust is sufficient to sustain a devise to a trustee commensurate with such trust, without reference to the illegal trusts which the testator has attempted to create in the same estate." That is, that if there be any legal objects of a trust, it may be sustained, although there may be other illegal objects or other illegal terms or limitations inasmuch as these are merely void.

The Chancellor accordingly qualifies his first proposition by saying that " although *some* of the objects for which a trust is created, or some future interests limited upon the trust estate, are illegal and invalid, if *any* of the purposes for which the trust was created are legal and valid, the legal title vests in the trustees during the continuance of such valid objects of the trust."

Now, in this case, we are not dealing with the *objects* of the trust, at least so far as the first point is concerned, but with the *means* adopted to accomplish those objects. An annuity is a lawful object of a trust. But the tying up of an estate during four lives is an illegal limitation in itself, without reference to its object.

The *condition* of paying the four annuities, is a suspension of the power of alienation and violates section 15 of title 2.

Admitting for the purpose of the argument, that the object and purpose of the devise to pay over the surplus of the rents and profits to Mrs. Jones and others, during the time that Mrs. Alston, James and Henry shall have no issue living, is valid ; yet this very authority to pay over is to continue during the lives of the four annuitants, depending upon the same limitation of the continuance of the estate, as the annuities themselves. The same remark applies to all the contingent devises and directions in regard to the surplus of the income. Besides, all these devises and directions are so mixed up with the devises of annuities,

that it is impossible to sustain the one set, without giving effect to the other.

But the radical vice of the devise is that it *per se* suspends the power of alienation by a condition which would continue the estate in the trustees for more than two lives in being.

It is not a case therefore, where some *objects* of a trust are valid and others are invalid, but the whole trust term is in itself invalid.

Still, it may be urged that in the cases which have occurred, where trust terms have been declared void, not on account of their objects, but on account of their duration, other devises in the same will have been held valid and sustained by the court. The first one of this class is *Hone's Executors* v. *Van Schaick*, (20 Wendell, 568.) There devises of specific legacies to grandchildren, were maintained, notwithstanding the trust term for other persons was held void. But as J. Bronson remarked, this was an entirely independent provision, not dependent either upon the trust term or upon any of the other devises. Its being maintained in no way interfered with the intention of the testator, either special or general, but carried it out. His original intent was that no part of the sum constituting these legacies should go to his children. No inequality among the children was produced by sustaining these legacies.

The next is the case of *Gott* v. *Cook*, (7 Paige, 521,) in which case the contingent limitation to the children of a deceased niece and to her surviving husband, formed no part of the integral devises, and was in no way connected with the main devises of the will. It could not be said that any of the other devises were or could have been made in contemplation of this being valid and effectual. The general intention of the testator was not therefore disturbed.

The next case is that of *Van Vechten* v. *Van Veghten*, (8 Paige, 104.) The destruction of the trust in relation to the house in Market-street, merely divided the principal among the heirs at law, the children, instead of the income. At p. 129, the Chancellor says : " No material change in the disposition which the testator intended to make, will be produced by separating the unauthorized trusts, &c."

So in *Irving* v. *De Kay*, (9 Paige, 521,) the invalidity of the term of suspension until 1840, had no operation whatever upon the bequests and devises of the will, produced no inequality, and did not interfere with the general or special intentions of the testator.

All the remarks of the Chancellor on this subject, rest upon the case of *Darling* v. *Rogers*, (22 Wendell, 485,) in the Court of Errors, which after all, must guide us in determining whether that court intended to establish a different rule from that which had been adopted and applied in the Lorillard case and in the James's case. In that case the trust was created to pay debts; that was the object and the general intention. To effect this intention the trustees were empowered " to *sell* and dispose of the estate real and personal, or to *mortgage* the real estate" and from the proceeds to pay creditors. It was held that the authority to *sell* was valid, though that to *mortgage* for general creditors was bad, while it would be good to satisfy judgments or other charges; (see the decree and resolution at the end of the case.) And it was further held that this authority to mortgage did not taint the one to sell. It is very obvious that the failure of this power to mortgage did not in the least interfere with the general intent. It was one of the modes in which the grantor sought to carry out his object; but he also provided another mode which was legal. This intent was executed in either way.

The true rule is given by Senator Verplanck at p. 495 of that case, " that when a *will* is good in part and bad in part, the part otherwise valid *is void*, if it works such a distribution of the estate, as from the whole testament taken together, was evidently never the design of the testator." And as he says, this doctrine was applied in the case of *Coster* v. *Lorillard.*

Ch. J. Nelson, p. 348, (14 Wendell,) says, that the court is not to shut its eyes as to the effect upon other parts of the will, by attempting to carry out a part of it: and all his remarks at pp. 348, 349, are applicable.

But the remarks of Senator Young at p. 391, 392, are particularly relied upon, not only as authority, but for their good sense and justice. I could not add a word to their force and therefore decline the attempt.

But so far did the court carry the principle of declaring the whole will void, that the life estates of the several tenants for life, in the lands, &c. devised by the 7th article of the codicil were void ; (see the decree, and the part in italic, at the end of the case.) Although no one had questioned their validity as separate and independent devises, yet retaining them while all the other parts of the will were destroyed, would not have accorded with the general intention of the testator, and they were therefore abrogated.

So in the case of James's will, Ch. J. Nelson, at p. 141, says, "I can never consent to modify and maintain last wills and testaments, where the intent of the testator is thus palpably defeated, and where great injustice must be the consequence to a portion of his descendants."

J. Bronson's remarks, p. 145, 146, show that he had come to the same conclusion, although in the view he took, that the *whole was void*, he did not deem it necessary to consider the effect of a bad part upon that which was good.

But perhaps the best evidence of the opinion of the Court of Errors, is to be found in the fact, that the Chancellor in *Irving* v. *De Kay*, (9 Paige, 527, 528,) endeavors to show that a different rule had been established in *Darling* v. *Rogers.*

I have already examined that case, and shown I think, that it is not applicable at all to the question of the general intention of the testator, and that Mr. Verplanck, who gave one of the opinions, drew the distinction which I mention. See *Osgood* v. *Breed*, 12 Mass. Rep. 534 ; 1 Russell, 217 ; 1 Tamlyn, 261 ; on this point.

In the present cases, it is obvious that to set aside the trust term in relation to one-half of the estate, and maintain the first four devises, a gross and monstrous inequality will be produced, and the intent of the testator frustrated. The result of such a decision would be that Mary Jones would receive one-eighth part of the whole estate, by virtue of the devise to her, and also one-eighth of the half devised in trust ; that is, she would have one share and one-half share of the estate, while Henry would receive one-half share, and thus Mrs. Jones, and the other three first devisees

named, would each receive three times more than Mrs. Alston, James or Henry.

It cannot be denied that the different parts of this will constituted one plan; that the four first devises were made in contemplation of the other provisions for the other children, and that the parts are mutually connected and dependent on each other, and that neither of them, the first four devises or the trust term, could be struck out without marring and frustrating the testator's main and chief intention.

The strong language of Senator Verplanck, and of Senator Young, in the cases already quoted, are very applicable to this result, and leave nothing for me to say upon its injustice and downright iniquity.

*M. S. Bidwell* and *D. Lord, Jr.*, for the executors and trustees of John Mason; also for the committee of John Mason, Jr., and for sundry infant defendants, made the following points.

*First.* 1. The estate is divided in four eighth parts, given by way of direct legal estate, and four by way of trust estates.

2. The shares given in trust, are distinctly and separately appropriated, one to each of the children named as *cestui que trust*, and their issue, &c. (*De Peyster* v. *Clendining*, 8 Paige, 306; *Bulkley* v. *De Peyster*, 26 Wend. 21.)

3. The trust to improve the property, to receive the income, and to pay over the same to the annuitants and donees of the surplus, is valid as a mode of disposition. (1 R. S. 729, § 56, 55, 53. *Kane* v. *Gott*, 24 Wend. 641.)

*Second.* 1. The trust for Helen, Mrs. Alston, is to pay her an annuity of $3000 during the joint life of her and her husband, to accumulate the surplus during the minority of her children, to pay it to them on their attaining full age; and it is valid. (1 R. S. 729, *ubi supra*, and 723, § 15, 17; 726, § 37, subd. 2.)

2. This trust, during the time she might be without issue, to pay to other persons designated, being dependent on the life of Alston, is unobjectionable. (1 R. S. 723, 726.)

3. The provision in case of her husband surviving, to pay him the annuity for his life, if it requires the estate to continue in the trustees for his life, is nevertheless unobjectionable. It is but a

second life in being, and the remainder in the issue, is vested on the mother's death. (1 R. S. 723, *ubi supra*.) But is a new charge. or a legal remainder given to her children.

4. The gift of the remainder in fee, as a legal estate after the death of Mrs. Alston, if she survived her husband, or on her death, if she did not survive him, was valid; vesting the remainders in her children on their birth respectively, and during her life, and is clearly unobjectionable.

*Third*. 1. The trust for James Mason, is to pay him an annuity of $2500 per annum for life, the surplus of the income of one-eighth over the annuity, to his issue, to accumulate until the issue come of age, and to be then paid to them was valid. See point 2d, subd. 1.

2. The trust, while he should be without issue, being limited to his life, is unobjectionable.

3. The gift of the remainder in fee, on his death to his issue, subject to the annuity to his widow surviving, is valid; vesting remainders in his issue as they are born respectively. It terminated the trust.

4. The gift on his death, without issue to Mary, Rebecca, George (or his children,) Helen (or her issue,) Sarah, and the issue of Henry, by representation, is a limitation not beyond one life in being, and is a valid contingent remainder.

5. The annuity to the wife of James, is not by way of a trust to be performed by the executors, but a charge directly upon the legal vested remainders, taking effect on his death, and is valid.

*Fourth*. The interest of Henry Mason, and his wife and children, &c., stands in all respects like that of James.

*Sixth*. 1. The trust to pay John an annuity of $2000 per annum, is unobjectionable.

2. The gift on his death, of the eighth, and the surplus over the annuity in the mean time during his life, to Mary, Rebecca, George (or his children,) Sarah, Helen (or her issue,) the issue of James, and of Henry, being a remainder to take effect on a single life, is clearly valid: vesting on the testator's death and on the birth of the issue defined.

3. Although there is a confusion of words in this clause, the meaning is both clear and unambiguous.

There is a clear intent to give, 1. A remainder in fee on the death of John. 2. The surplus of income, in the mean time during his life. 3. The objects of the gift are clearly defined, and the same persons for both.

*Seventh.* The discretion to the executors, is wholly unobjectionable in law, applying severally to each share put in trust, and terminating with the life of each of Mr. Mason's children. (1 R. S. 734, § 95, subd. 2.)

To the argument of Mr. Spencer in behalf of Henry Mason, the counsel for the executors, made the following reply.

I. The provisions of the will, in respect to the annuities, do not suspend the absolute power of alienation beyond the period prescribed by law, and are not void.

1. The law regards things, not names : the intention of the parties, not the phraseology in which it is expressed. This doctrine is peculiarly true, in regard to the construction of wills, which are often drawn in haste, and by persons not accustomed to such business.

It was clearly the intention of the testator, that his estate should be divided by his will into eight equal parts : four of which he gave absolutely, and the other four he put in trust. As the last four were all put into the hands of one set of trustees, and were, during the continuance of all the trusts, held by them in common, and undivided, the draftsman of the will, for the sake of convenience and brevity, in one place, when speaking of them in contradistinction to the four eighth parts in which legal and absolute estates were given, described them collectively, by the expression "one equal undivided half part," instead of using the term "four equal eighth parts." The expression itself, in the place in which it is used, is perfectly proper, and affords not the slightest ground for the conclusion attempted to be drawn from from it, that the *whole* trust property was to remain in the hands of the trustees, until all the annuities were terminated. These four trust shares did constitute, according to the most exact use of language, " an equal undivided half part," and yet, with equal truth and accuracy, they are four several though equal undivided eighth parts, and accordingly, in other parts of the

will, where such a distinction would properly be observed, they are described or alluded to, as several and distinct shares.

That they were in fact intended by the testator to be several and distinct shares, each chargeable with one annuity, not *all* chargeable and to be held in trust for *all* the annuities, is demonstrable from the provisions of the will. Take, for instance, the case of Mrs. Alston : upon her death, one of these shares vests absolutely in her issue ; the trusts cease, and the legal estate vests *eo instanti* in her issue ; subject, indeed, to the charge of the annuity to Mr. Alston, if he should then be living, but not, even for that purpose, held by the trustees in trust, or being, in any respect, liable for the other annuities. And the same reasoning applies to the other shares and the other annuities.

It is true that, while these several shares remain in the hands of the trustees, they are held by them in common and undivided. But this is the case of all estates, real and personal, held by tenants in common.

They are, nevertheless, as truly several and distinct estates, as if each share and estate was a separate piece of land. One share is held by the trustees, during the life of a certain person who is named and who was in being at the creation of that share or estate ; another share is, in like manner, held in trust during the life of a certain other person, who also was named and was in being at the creation of that estate ; and the same may be said of all the shares ; but no one of them is to be held in trust during the continuance of the lives of all four annuitants, or of more than two lives in being at the creation of the estate.

Can reasoning be more plain or more conclusive ? Does it require to be enforced by judicial authority ?

If it does, the judgments of the Chancellor and the Court of Errors in the case of *De Peyster* v. *Clendining*, furnish a most explicit decision of the highest authority, upon this very point. (8 Paige, 306 ; S. C. *nom. Bulkley* v. *De Peyster*, 26 Wend. 21.)

The fact that, in the learned and elaborate arguments in behalf of Henry Mason, not the least allusion is made to this decision, which is so applicable and so conclusive, is an admission that it cannot be answered or explained away.

2d. But, if all the four shares remained in the hands of the trustees, chargeable with, and until the termination of each and all these annuities, the absolute power of alienation would not, on that account, be suspended beyond the period allowed by law.

There is no contingency as to the annuitants or their rights; both were ascertained and fixed by the will. These annuities they can release.

It is no objection that the annuitants may not choose to do this; for, if that made the estate inalienable, then every gift of property would be inalienable. They have the legal capacity, the power to do this, and thereby to determine the trust. The *power* of alienation, therefore exists; it is not absolutely suspended. The case therefore cannot come within the language of the statute, or the mischief intended to be guarded against by it.

Even if the annuitants were under the disability of infancy or coverture, that disability, according to an express decision of the Chancellor, in the case of *Bower* v. *Smith*, decided April 4th, 1843, would not suspend the power of alienation, within the meaning of the statute; because infants and femes covert can, with the aid of the court, alienate their property.

There are therefore, persons in being, who, if they choose, by the use of legal means, can remove every difficulty or impediment in the way of an alienation of the estate. This the testator provided for in the will. Therefore, if the estate or any part of it should not be alienated, it will not be because there is not a *power* of alienation, but because those who have this power do not choose to exert it.

II. The trust for the accumulation for the benefit of unborn children is valid.

It commences within the time mentioned in 1 R. S. 726, sect. 37, subdivision 2: for instance, as to one-eighth part, it must commence, if it should ever commence, during the continuance of Mrs. Alston's life, because, upon her death, the legal estate itself in that share, will vest in her issue; and so of the other shares.

And it will not commence *before* the minority of the child, that is, before the birth of the child, because, according to famil-

iar and well settléd principles of law, the accumulation which accrues previous to such birth belongs to the children then in being, and children subsequently born are let in, only to a share of the subsequent accumulation.

· But if the direction for this accumulation were invalid, the will itself would not, on that account be void. The case would then come within the operation of 1 R. S. 726, sect. 40, and, so far as the provision was invalid, the rents, &c. would belong to, (not accumulate for,) the persons presumptively entitled to the next eventual estate ; as for instance, in regard to the accumulation for Mrs. Alston's children, they would belong either to Mrs. Alston herself or to her children ; to which of them they would belong, would depend upon the question whether she, or her children, should be deemed to be presumptively entitled to the next eventual estate.

It is neither necessary nor proper to inquire or to decide in this case, who would be entitled to the rents, &c. if any or all of the accumulations should be void ; or whether they are void ; because the complainant clearly is not presumptively entitled to the next eventual estate in respect to any of the shares ; and as this bill is not filed by the trustees to settle the construction of the will, it is sufficient to know that the complainant can have no interest in the question, and, therefore, can have no right to ask the court to pass any opinion upon it. (*Bower et ux.* v. *Smith*, before cited, decided by the Chancellor, April 4, 1843. *Parks* v. *Parks*, 9 Paige, 120.)

III. It is assumed in the argument in behalf of Henry Mason, that there is an absolute suspension of the power of alienation for one month after the death of the testator.

But there is no such suspension.

Upon the death of Mrs. Alston, whether within one year, one month, or one hour, after the testator's death, one share vests absolutely and immediately in her issue ; and so in regard to the other annuitants, the respective shares, upon their respective deaths, vest immediately (and not after one month from the testator's death,) in the persons to whom their respective estates are given.

There is no ground therefore, for assuming that there is an

absolute suspension of the power of alienation for a single moment after the testator's death.

The duration of the trust as to each share, depends entirely upon the continuance of one or at most two lives in being.

The direction for the accumulation accruing after one month from the testator's death, is evidently intended to take effect as to each eighth part only in the event of the continuance of the respective lives of the several annuitants; it does not extend the trust one moment after the death of any annuitant as to the share given over upon such death.

IV. But if the trusts are all void, the other parts of the will, which are not dependent on or connected with them, are valid.

The testator had a right, undoubtedly, to bestow one-half of his property upon four of his children; to secure this portion to them absolutely; and to leave the other half of his estate undisposed of, to be distributed under the statute of distributions. In such a case, the four favored children would take under the will, notwithstanding their right to share under the statute of distributions. (*Bristow* v. *Ward*, 2 Ves. jr. 336.)

And, in like manner, what the testator has given according to law by this will, cannot be taken away from the donees, on account of his having, intentionally or unintentionally, omitted to dispose of the residue of his estate, although some or even all of these donees will likewise be entitled under the statute to a share of such residue.

Whether they would be allowed to claim and take under some clauses of the will, and at the same time to claim in opposition to other clauses, upon the ground of their invalidity, may be doubted. A court would perhaps put them to their election, and require them either to abide by the will altogether, or to renounce all benefit under it. (2 Sugd. on Pow. (6 ed.) 159, 160; Taylor's Precedents of a Will, 379, 384, in notes.)

But it would be unjust and unreasonable, as well as an usurpation of power on the part of a court, to set aside the valid provisions of the will in their favor, merely because *other persons* do not choose to accept what the testator has given to *them*, and voluntarily dispute its legality.

Whence does a court derive authority thus to disregard and

repeal the testator's will? Not certainly from the common law; that sustains and gives effect to the valid parts, although the most important parts of the will may be void. Nor has the legislature given such a power to any court. On the contrary it has expressly directed courts " to carry into effect the intent of the party *so far* as such can be collected from the will, and is consistent with the rules of law." (1 R. S. 748, sect. 2.)

The distinction is plain and familiar between an enactment which declares a contract or a trust, &c. void, and one which declares void the deed or instrument containing the invalid provision. Although the legislature has declared certain trusts void, it has not declared that the will itself which contains them, or that other independent provisions in such a will shall be void.

The argument against these valid provisions from the presumed intentions of the testator is dangerous, inconclusive and unwarrantable.

Undoubtedly, the testator might in all such cases, provide in the alternative for a different disposal of his estate, if certain provisions of his will should be pronounced void; but the very fact of his not inserting in his will such an alternative provision is a reason why the court should not interfere, with what he has lawfully done.

Defects in wills have often been discovered, which were ascribable, on the strongest grounds of probability, to inadvertence or ignorance; but courts have never attempted on such presumptions, to supply these undesigned omissions. (18 Wend. 255.)

Besides, if the argument is of any weight, it will apply to all wills, which contain a single provision, that is invalid or that fails to take effect. If not, what proportion must the valid part bear to the invalid, in order to be exempt from this destroying rule?

If, in answer to this question, no certain proportion can be assigned, every thing must depend on the arbitrary discretion of the judge, or every will must be altogether abrogated, which contains a single invalid or ineffectual provision. (See the observations of Mr. J. Bronson on this subject, 18 Wend. 287, 288.)

To whatever extent our courts, in one or two instances, have gone in setting aside wills on account of some illegal provisions,

yet they certainly have never approached the extreme point to which this court is urged to go in this case, and it is equally certain, that, in the latest and consequently the best considered and most authoritative cases, they have manifested a disposition not to carry the principle of the general invalidity of the will any further.

The settled doctrine on the subject is declared by Chancellor Walworth in the following explicit language.

" It is also a well settled principle of law, that when a will contains distinct and independent provisions, devising different portions of the testator's property, or distinct estates or interests in the same portions of the property, some of which provisions are consistent and others inconsistent, with the rules of the law, the former will be permitted to stand, although the latter are declared illegal and void, except when they are so dependent upon each other, that they cannot be separated." *Parks* v. *Parks*, (9 Paige, 117.) (See also 8 Paige, 128, 129 ; 9 Paige, 528, and the opinion of Mr. C. J. Nelson and Justices Bronson and Cowen, 18 Wend. 275, 285, 306 ; 20 Wend. 568, 569.)

This is explicit; and in this court at least, while it remains unreversed, must be deemed authoritative and conclusive.

And if it were necessary or proper to examine the grounds on which it rests, it would be found to be supported fully by the recent decisions in the Court of Errors.

If the rule thus laid down were open to exceptions, yet there are strong reasons for confining this case within the rule.

If the will should be set aside, an important and valid provision for Mr. George Jones would be abrogated, in opposition to the certain and undoubted intention of the testator, without any equivalent to Mr. Jones.

Can the court, or would the court do this ?

It is *certain* that the testator intended to give to the persons named in the first five clauses of his will, one-half of his property. It is *certain* that he intended that his other children should not have the other half absolutely.

His intention in these two points is ascertained, positively and beyond a doubt.

What he would have done, if he had been informed that the

trusts in his will were void, is not known, and never can be known!

There is *no ground* to presume that he would have given to each of his sons, and Mrs. Alston, respectively, an absolute legal estate in an eighth of all his property; especially if he had foreseen, that it was owing entirely to themselves, that the trust which he had established was disturbed.

To raise such presumption, not only without any evidence, but in opposition to so much evidence to the contrary, and, upon such a presumption, to defeat his certain, known, and lawful intentions, would be as alarming as it would be unreasonable and unjust.

V. It is an ancient and established maxim in the construction of all instruments, so to decide *ut res magis valeat quam pereat.* This rule has been universally commended for its wisdom, justice and benignity. Wills, especially, ought to receive such a construction, being often, and indeed generally, drawn in haste, by unpracticed and unskillful hands, and without opportunity for a careful selection of language, or a careful consideration of the effect of provisions inserted or omitted.

If wills are set aside or disturbed for light or doubtful reasons, litigation and family controversies are invited and promoted, and the salutary control over children, when they are young, improvident and exposed to temptation, which results from their dependence upon the parental bounty, will be weakened. Good morals, therefore, and principles of public policy afford additional considerations in favor of supporting wills, so far as they are not clearly invalid, and especially in those cases, where a party voluntarily questions the legality of a provision in his own favor, and makes that the ground of an attack upon other independent provisions, which in themselves are clearly legal and valid.

VI. Upon the whole, the more this will is examined and the more the principles of law as now settled are applied to it, the more clearly will the validity of all its provisions appear.

THE ASSISTANT VICE-CHANCELLOR.—The most formidable objection made to the validity of the devise in trust, is that it vests one-half of the estate in the trustees for the payment of an-

nuities to more than two persons for their lives, and that the power of alienation is thereby suspended for more than two lives in being at the creation of the estate.

It is insisted in behalf of James and Henry Mason, that the devise vests the whole of the half part of the estate, in the trustees, as an entirety, upon the whole of which the annuities are charged, and which cannot be relieved from that charge, until all those annuities are accomplished.

The trustees contend, on the other hand, that the testator intended to vest the trust fund in them, as four several and distinct equal eighth parts or shares of his estate ; each eighth part being chargeable with one annuity and vesting absolutely on the cessation of such annuity ; and that there is no charge upon either of those eighth parts, for any of the other annuities.

If the former be the true construction, the objection to the devise must be sustained ; for there are four life annuities certain, created by the will, and three more which are contingent.

If the devises in trust are to be deemed separate and distinct as to each eighth part of the estate, independent of the others, the annuities do not suspend the alienation of such part beyond the time allowed by law.   Because, assuming that the annuities are inalienable, as is claimed by the counsel for Henry Mason, there are only two successive annuities attached to either of the eighth parts separately considered ; and upon the termination of the second annuity, at all events, the estate in such eighth part will vest absolutely in possession in those to whom the capital of that eighth part is given by the will.   The estate in the eighth part of John Mason, Junior, will vest absolutely upon his death ; and so the eighth parts of James and Henry, if they survive their respective wives, will vest in like manner upon their decease ; and Mrs. Alston's eighth will vest in her lifetime, if she survives her husband.

In order the better to ascertain whether any portion of the trust estate must necessarily remain suspended during the continuance of more than two lives, I will collate the clauses in the will which are thought to bear upon the question.

The half part of the estate is given entire to the trustees, for the uses and purposes declared.

The trustees are to rent, invest and improve the same, and receive the income.

*By and out of the income,* or so much of it as may be necessary for that purpose, they are to pay the four prescribed annuities, to Mrs. Alston, John, James and Henry. Each annuity is to be paid in two equal instalments, semi-annually, and to continue during the respective lives of the four annuitants, except as to Mrs. Alston in the event of her surviving her husband.

If he survives her, the annuity of $3000 is continued to him for life; and the annuities to James and Henry are continued in like manner to their respective widows, in case of their leaving their wives surviving.

The trustees are clothed with a discretionary power to increase the annuities to those three children respectively, but the power does not extend to the widows of the sons, or to the husband of of Mrs. Alston.

Should the clear net income of the *trust fund,* that is, of the one-half part of the estate, exceed the annuities, the surplus in regard to three-fourth parts thereof, is directed to accumulate equally for the benefit of the children or other issue of Helen, James and Henry respectively, during their respective minorities, and to be paid to them respectively at twenty-one; the children &c. taking by representation, and not *per capita.*

While Helen, James and Henry are without issue living, the surplus of the income of their " *said trust shares,*" after satisfying the annuities to them or to the surviving husband of Helen, and the surviving widows of James and Henry, is to be paid to the three elder daughters, and to George Jones, equally, and to their respective issue by representation.

Mrs. Alston, from the death of her husband, and her issue if any, while both are living, and the issue if any, of James and Henry, are to participate in the division of the last mentioned surplus income.

Upon the death of Henry and James without issue, the testator gives the " *two equal fourth parts,*" of the half of his estate, (subject to the annuities to their widows,) to his other children (except John) and their issue. And if one of those sons dies without issue, " the one-fourth part" of the half of the estate is divisi-

ble in the same manner, including in the distribution, the issue of the other son.

These provisions are brought in favor of the argument that the testator intended to keep the half part of his estate entire, as long as any of the annuitants survived.

There are other provisions interspersed with these, which tend to an opposite conclusion. Thus upon the death of Mr. Alston, leaving Helen surviving, her annuity ceases; and the testator thereupon gives to her and her heirs, executors, administrators and assigns for ever, *the one equal undivided fourth part* of the half part of the estate which was vested in the trustees.

If Mrs. Alston should die before her husband, the testator in that event, gave the last mentioned fourth part of the trust fund, subject to the annuity to Mr. Alston, to her issue absolutely.

The division of the half into lesser parts, for the active purposes of the trust, is recognized in the direction to accumulate the surplus income, for the benefit of the issue of Helen, James and Henry. The direction is limited to *"three equal fourth parts"* of the trust fund, and omits the surplus arising from the fourth part subsequently disposed of in connection with the annuity to John; but still the surplus upon this clause, is to be ascertained after deducting the *three annuities.* Then in the next paragraph of the will, where the testator disposes of the surplus accruing while the annuitants are without issue living, he speaks thus, "And with regard to the *said trust shares* of the said Helen Alston, James Mason and Henry Mason, so long as they may *severally* be without issue living," &c. He thus treats the *three equal fourth parts,* and the *trust shares,* of those three children, as synonymous terms.

Upon the decease of his son John, the testator gave *"the one equal fourth part"* of the half part of his property, *together with the surplus of the income thereof during his life after satisfying his annuity,* to the three elder daughters, to Mr. Jones, Mrs. Alston or her issue, and to the issue of the sons; in the same manner as I have described in reference to the surplus of income while the other three annuitants were childless.

The devise upon the death of James and Henry, is in these words:

"And upon the deaths of the said James Mason and Henry Mason *respectively*, I give, devise and bequeath *the two equal fourth parts* of the said remaining half part of my property and estate, both real and personal, *to their respective issue*, such issue taking share and share alike, by representation, and not *per capita*, subject to the said annuities to the widows of my last named two sons, should such widows survive them."

Following this, is the provision before stated, in the event of one or both of these two sons dying without issue; by which if one dies leaving no issue, the one-fourth part of the half of the estate is given over to the other branches of the family, including the issue of the other son.

It is undoubtedly true, that the circumstance of the four equal eighth parts being given to the trustees by the description of "*the remaining equal undivided half part*" of all the estate, is comparatively unimportant in determining the nature and extent of the interests in the various portions which make up that half of the estate. And I am not disposed to attach much weight to the argument arising from the joint bequest, and the union of the words in which it is made, except in connection with some union of the things given thereby. A different rule as to the effect of such general words, would drive testators to intolerable prolixity in wills, so that where provisions were to be made for eight children by a trust for each, there would needs be a separate bequest of each eighth part in turn, with a repetition as to each of all the trust clauses and powers, and the disposal of the fund.

The import of the general words used, must be ascertained upon a view of the whole will, and of the effect of the various dispositions sought to be made by the testator.

I should have no difficulty in holding that this devise was several and distinct, as to each eighth part constituting the half given in trust, if the disposition of the whole property had been equal, to and among the eight children and their respective descendants. I mean, equal independent of the difference made in giving the four eighth parts first mentioned in the will, absolutely, and in bestowing only partial life interests in the income, upon John, James, Henry and Mrs. Alston. The latter discrepancy

would have had no influence, if Henry and his issue, for instance, were unitedly to receive as much of the estate as Mrs. Hamersley and each of her elder sisters.

But the testator has departed essentially from an equal division of his property amongst the several branches of his family.

To his daughters Mary, Rebecca, and Sarah, and to the children of his daughter Serena, (to the latter together and in connection with the life estate of their father,) he gave in the first instance, each an equal eighth part of his estate. Mrs. Alston and her family, provided she had children living at the death of the testator and they survived her, (but not otherwise,) would receive another equal eighth part. While the three sons of the testator were restricted to the annuities for their lives, and the whole surplus of income arising from two-eighths of the estate as long as they remained childless, would be divided amongst the five first named branches of the family; and as to the other eighth part, the surplus would in no event enure to the benefit of the annuitant. To illustrate this inequality, let me take the facts as they were at the death of the testator, estimating the assets from the uncontradicted statement in the bill.

James and Henry Mason then had no children; Mrs. Alston had one child living. The income of the estate, I will assume at $40,000. At the outset, the daughters Mary, Rebecca and Sarah, and the son in law George Jones, would receive each $5000 a year in respect of the absolute gifts to them. Mrs. Alston would take her annuity of $3000; and a further sum of $2000 a year would be put to accumulate for her child. James and Henry would receive their annuities of $2500 each, and John his annuity of $2000.

The remaining $8000 of the income of the estate, would be divided equally between Mary, Rebecca, Sarah, George Jones, and the child of Mrs. Alston.

Thus the three daughters first named would each take $6600 annually, and Mr. George Jones the same. Mrs. Alston would receive $3000, her child $1600, and $2000 more be accumulated for the latter. While James and Henry would take $2500 each, and John $2000. In other words, the five daughters and their

families would receive $33,000 a year, in the aggegate ; and the three sons an aggregate of $7000 a year.

This inequality would continue, so loug as the sons remained without issue. On the birth of issue to either Henry or James, such issue while living, would participate in the benefit of the surplus in the same manner as the child of Helen Alston, and as to the family of such son, the inequality would cease. It would nevertheless continue in reference to the sons who remained without living issue, though with a disproportion somewhat lessened.

I do not refer in this place to the discretion vested in the executors for the increase of the annuities, nor to their subsequent liberal exercise of that discretion to the full extent of giving to James, Henry and Mrs. Alston the entire income of the respective eighth parts of the estate. The construction of the will is to be deduced from what might have occurred under its provisions, not what has been done. The executors might have left the annuities where the testator placed them, and the grant of the discretion therefore does not alter the effect of the will in reference to the point in question.

There is also an inequality in the provisions made for the four children who are the annuitants by the will, which is embarassing in distributing the trust half of the estate into four equal parts and considering each part as separately devised in trust.

The annuities are unequal, and the child of Mrs. Alston living at the testator's death, partook with the families of the other daughters, in the surplus income from two eighths of the estate to the exclusion of Henry and James and their future issue ; and the same child became beneficially entitled to the surplus from another eighth part of the estate, by way of accumulation.

I am now assuming that the trust for accumulation is unobjectionable, and treating the annuities as they are given by the will.

The birth and continuance of issue of James and Henry, will not remove this inequality between them and Mrs. Alston. She will still receive $500 a year more than either of her brothers ; and her issue will be on an equal footing with theirs in respect

of the surplus from the three fourth parts of the trust fund, if that clause of the will is to have a literal construction.

The inequality between John and the others provided for in the trust, is not only greater than that of the other sons, but is to continue during his life.

These brief illustrations of the effect of the will, demonstrate that it does not distribute the estate into equal eighth parts, of which one entire part is designed for the exclusive benefit of each of the eight branches of the testator's family.

This equal distribution is true of the half part which is given absolutely to the four branches which are first named in the will; but it is wholly untrue in regard to the four remaining branches of the family.

The testator does not contemplate in his will, any deficiency in the four annuities. From the magnitude of the estate, no deficiency is probable; but there are many contingencies of a kind which often occur, that may bring it about.

Let us suppose that the trust fund or half of the estate, should a year hence, produce an income of only $8000, and that Henry and his wife should then be dead, leaving issue.

Under the clause of the will giving the annuities, Mrs. Alston would in that case be entitled to $2400 for her annuity, James to $2000, and John to $1600.

Now if the trust fund be devised in separate eighth parts, the eighth part designed for Mrs. Alston and her family would in this event pay only $2000 for her annuity ; because on this construction, the eighth part held in trust for each of the four branches of the testator's family, would become divisible and vest in the issue of each branch on the death of their parents, and Henry's fourth part would have been withdrawn from the trust. So if Mrs. Alston should survive both of her brothers and their wives, and the income of one-eighth of the estate in a given year, should be only $2000. Is she to accept that sum in full for her annuity, or is she to receive $2400 which would be her proportion of the $8000 income arising from half of the estate ?

This cannot be answered by saying that she must make up her due proportion as well as all arrears, out of the income during those years when there is a surplus. There may be no such

fruitful years, and the annuity *must come out of the income.* Besides, this is a question of strict right on her part, and she may justly insist, (upon the construction that the devise is entire,) that any surplus of income in other years shall enure to the benefit of her children as provided in the will.

In the will of Clendining, which was cited as a direct authority in favor of the position that the devise was to be construed as a separate trust in respect of each of the equal eighth parts of the property; there was no such inequality as exists in this case. (*De Peyster* v. *Clendining*, 8 Paige, 295. C. S. on appeal, 26 Wend. 21.) Although two of the children were to receive under that will, twice as much as either of the three others, yet the capital was distributable to their respective issue in the same relative proportions. It was therefore in effect, a bequest of two-sevenths of the residuary estate to trustees, in trust to pay Letitia the income during her life, and to pay the principal fund to her issue at her death; a like bequest of one-seventh for John Clendining and his issue; and so on of the shares of the other children. Thus there was no difficulty in construing the joint bequest of the whole property in trust, as separate bequests of the respective shares intended for each of the children and their respective issue. And the Chancellor held that the testator intended to suspend the absolute ownership in each share, no longer than the joint lives of his widow and the child entitled to the life interest in such share.

There is a direction for distribution in the will of Mr. Mason, on the death of each set of annuitants, and it remains to be seen whether upon the true construction of the will this direction must prevail under every contingency, and without regard to the annuities which may then be continuing and payable to the other annuitants. If such a construction can be maintained, the devise in question is relieved from the objection with which I set out. It then becomes what the defendants claim it to be, a devise in trust of four distinct and separate eighth parts, one of which is subject to the charge of an annuity of $3000, one to a like charge of $2000, and the others are subject to a like charge of $2500 each.

Now although the trust fund is created as being one-half of the estate, and given to the trustees as such, with a single and entire direction to rent and invest it, and receive and pay out the income of such half part, and not of any one-eighth part or any less than such half; yet it is perfectly plain that there is one quarter of the trust estate which is not subject to any charge that bears upon the other three quarters of the trust, and which is to be distributed upon the termination of a single life. This is the one quarter of the fund which is designed for John Mason, Junior.

The provision in the will is explicit, that the whole surplus income of this quarter, after paying the annuity of $2000, is to be divided at his death. This prevents it from being affected, under any circumstances, by the larger annuity given to the Alston's; so that if in any year the net income of the half of the estate should be only $8000, there would be no abatement in John's annuity. The other three annuities must be paid out of the $6000 arising from the three remaining fourths of the trust estate.

Equally positive and explicit is the direction in the will, that upon the death of John, this one-fourth part is to go directly, and absolutely, without any charge upon it, or any reservation of time or circumstance, to the devisees of the same in remainder.

The detaching of the one-fourth part from the operation of the general and joint expressions used by the testator respecting the whole trust fund, essentially weakens, if it does not entirely overthrow, the argument founded upon those expressions in reference to the other three fourth parts.

Now to recur to the difficulty which arises from the inequality of the bequest carved out of the half part put in trust.

There is a positive direction to the trustees, to pay out of the income of this half part, an annuity of $3000 a year to Mrs. Alston for her life, and to her husband for his life after her death. How can this be accomplished if the half of the estate should produce only $10,000 of income, and on the death of James or Henry, one-fourth of the half is withdrawn from the trust? We have seen that John's one-fourth is not to be touched to eke out the annuities of the others. And $5000 of income will not pay two annuities amounting to $5500.

Yet the provision is equally positive, that on the death of

*either* James or Henry, the equal fourth part of the trust fund, is to go directly to their respective issue, vesting absolutely, and subject only to the annuity to the surviving widow of the deceased. This is the clear effect of the devise, although the language speaks of the death of James *and* Henry, and the gift is of the *two equal fourth parts*. The language is distributive, as shown by the words *respectively*, and *respective issue;* and the next paragraph, which is a part of the same particular devise, speaks of the death of the sons *or either of them*. If either James or Henry die without issue, this paragraph creates a direct gift of the one-fourth part, to the other children of the testator and their issue, vesting absolutely in the persons and classes entitled by the terms of the gift, subject only to the widow's annuity, if there be a widow surviving.

Another provision of the will which at first blush, conflicts with a separation of the trust into four distinct parts, is the one which gives a discretion to the trustees to increase the respective annuities. This opens the way for a much greater inequality between Mrs. Alston and her brothers, than that to which I have referred. And if this discretion were to be extended over the three fourth parts of the trust, if might interfere conclusively with any distribution till the end of three lives at least.

For example, I will assume that the income from the three fourths is at this time, $15,000.

In their enlarged discretion, the trustees may determine that Mrs. Alston ought to receive eight, nine, or ten thousand dollars a year, out of this income.

Unless the trust as to the three fourths is to remain entire, notwithstanding the death of Henry or James, or of both; this discretionary enlargement would be cut off by such an event, contrary to the apparent intent of the testator as derived from this clause of the will.

Of course the same argument holds good, in reference to a supposed increase of the annuity to Henry, or to James, beyond one fourth of the income.

Moreover the intent is very clearly expressed, that the discretion may be exercised at any period during the life of Henry, James, and Mrs. Alston respectively ; and there is no design in

express terms, that it shall be restricted in its extent, when exerted in behalf of either, to the one-fourth of the income of the trust estate.

Whether the trustees may enlarge either annuity more than once, or cut it down again, after once increasing it, I am not required to express an opinion.

The next clause in the will, which is the one for accumulation, when taken by itself, presents another obstacle to the severance of the three fourth parts of the trust, which constitute its subject matter; because it makes a joint charge of the three annuities on the income of those three fourth parts. It does not direct the surplus income of the *several fourth parts*, to be accumulated, nor can it be so construed upon the literal terms of the paragraph. The three annuities, Mrs. Alston's being $500 more than either of the others, are to be paid first out of the three-fourths of the income of the trust fund, and the residue of the income is to be divided equally.

Therefore regarding them for the moment, as three distinct shares, there is $2500 payable out of each share, and then $500 more which is to be paid to Mrs. Alston by the three shares equally, one-third by each. Whether the income of the three fourths be $10,000 or $15,000, the result would be the same, because the surplus for accumulation is to be ascertained by first paying the three annuities, although they are unequal, and then such surplus is to be equally divided. This result would necessarily require the three fourth parts to be kept together so long as Mrs. Alston and her husband both lived, because her annuity, being more than the other two, would during all that time be a charge for the excess at least, upon the whole three fourths of the fund. And as she and her husband might outlive both James and Henry, if this clause of the will must receive a literal construction, it may suspend the power of aliening the three fourth parts for at least three lives in being at the creation of the estate.

If the annuities were increased pursuant to the discretion conferred upon the executors, the same difficulty would occur, if they continued to be unequal; and as the discretion extends to

increasing one and not the others, we are to regard it as if they had so exercised the power.

Thus the expression "the three equal fourth parts thereof," in the paragraph in question, does not aid the construction claimed that the devise in trust is wholly distributive.

To proceed one step farther, to the paragraph connected with the one last treated, and providing for the event that the three annuitants are without issue to take the benefit of the accumulation directed in the latter.

By this clause of the will, if either of the three are without issue, the surplus of the income of those respective trust shares, is to be divided among the other children. The language is, "with regard to *the said trust shares of the said* Helen Alston, James Mason and Henry Mason, so long as they may *severally* be without issue living, the surplus of the *income thereof*," &c., "after satisfying the said annuities to them, or to the surviving husband of the said Helen Alston, and the surviving widows of the said James Mason and Henry Mason, shall be paid," &c.

Here the three fourth parts are clearly treated as several, in respect of the three annuitants. Indeed they are spoken of as belonging to the annuitants; the *trust shares of Mrs. Alston,* &c. Then the surplus income is to be ascertained in the same manner after the second class of annuitants become entitled, as while Mrs. Alston and the sons are living. The annuities are to be satisfied first, in each case, and the surplus distributed.

Now the will is plain, that after the death of Mrs. Alston, her annuity, if her husband survives to take it, is to be a charge upon the one-fourth part of the trust fund by itself. It is precisely the same, in regard to the annuities continuing to the widows of James and Henry. Each is a charge upon a separate fourth part.

This being so, is it not a consequence, that the same mode of ascertaining the surplus for division under this paragraph of the will, is to be used from the outset? That the surplus income is the income of one-fourth of the trust, after satisfying the annuity of the person whose childless state occasions its distribution.

This appears to me to be the true construction. Nay, more,

that it is the necessary construction.  Let us apply the paragraph as the executors were bound to apply it at the end of a month from the death of the testator.  Mrs. Alston then had issue ; James and Henry had none.

The child of Mrs. Alston was entitled to the accumulation given by the previous clause ; while under this provision, there was to be a distribution in respect of James and Henry.  Taking the two clauses together, the infant Alston could claim no accumulation from the income of the trust shares of James and Henry.  The latter clause precludes such a claim.  Nor could Mrs. Alston's annuity of $3000 be extended over those shares of James and Henry for the excess of·$500 so as to swell her child's accumulation ; because in the case as it stood at the testator's death, the surplus income of those two shares was to be ascertained by satisfying their two annuities, and nothing more.  Therefore Mrs. Alston's annuity of $3000 would of necessity be paid out of her share, or one-fourth of the trust estate ; and the surplus income of the same one-fourth, and no more nor less, would be put to accumulate for her child.

This demonstrates that the two paragraphs which I have been considering, when taken together, do not sustain the position of a joint charge of the three annuities upon the three fourths of the trust fund, but are strongly in favor of the contrary construction.  The last paragraph is entirely inconsistent with any such joint devise and charge of the three fourths.

There are other provisions of a prominent character in the will, among those that I have before briefly collated, which lead to the conclusion that the devises are of separate fourth parts of the trust fund.

In the event of Mrs. Alston's surviving her husband, her annuity ceases, and one-fourth part of this fund, comes into her possession absolutely, in her own right.  This is an explicit direction, which is wholly independent of the remainder of the trust fund, and it is to take effect without any regard to the continuance or termination of the various other limitations of or in such remainder.

So if her husband shall survive her, the same fourth part will

then vest absolutely in her children or issue, subject to the annuity of $3000 which is continued to him.

Here again are directions equally as positive as those in regard to the share of John Mason, Junior ; and on giving them full effect, they detach another fourth part from any necessary connection with the other portions of the trust fund.

Nor is this their only influence and bearing upon the question, for as I have before observed, they in the one event extinguish the largest annuity given by the will and in the other fasten it upon the same one-fourth part of the fund, exclusive of all the other shares.

The latter result, which ensues upon Mrs. Alston's dying before her husband, is a strong argument to show that the testator never intended to make her annuity, under any circumstances, a burthen upon any or either of the other three-fourths of the trust estate.

This argument is to my mind strengthened by another consideration arising from the amount of the property. It is apparent upon the will itself, that the testator expected the trust would produce a considerable surplus income beyond the $10,000 required for the annuities. And we have besides the extrinsic fact, (to which resort may be had in aid of the construction upon a point like this,) that the income of one quarter of the trust fund, after his death, was nearly double the largest annuity. The testator could not have supposed that the annuity which he specified for Mrs. Alston, or any reasonable increase of its amount by the executors, would ever require for its support more than one-eighth of his estate.

To recapitulate in brief terms.

The devise is in its scope, joint and entire ; the direction to rent, improve or collect is also entire ; and the annuities are to be paid out of the entire income ; yet there is one-fourth part of the fund, the share of John Mason, Junior, which is in no wise connected with the other portions of it, the income of which fourth must be kept distinct, and the capital and surplus income vested and divided upon his death.

This effectually breaks the charm of the unity and entirety of the trust devise.

The fourth part destined for Mrs. Alston and her issue, must vest absolutely in her, on her husband's death; or if she die first, it then vests in her issue, and is totally detached from the residue.

The will is equally explicit that the several fourth parts designed for the issue of Henry and James, shall vest absolutely, upon their respective deaths.

The direction in the will for dividing the surplus income, while either of those two sons is childless, cannot be carried into effect upon any other basis than a separation of the trust into four distinct devises of as many equal parts.

And the only part of the will that is adverse to this conclusion is the direction to pay unequal annuities, which by means of a deficiency of income, or an increase of their amount in unequal proportions by the executors, may if it is to be literally executed, require a joint charge on three-fourths of the fund, to carry out their full payment.

The testator did not have in view the existence of any state of things which would make the joint charge *necessary*, in order to pay the annuities.

And his clear paramount intent in respect of the distribution of the surplus income, and the vesting of the capital of one-fourth absolutely, on the death of each of the four children who were annuitants, conflicts with any joint charge upon any two or more of such fourth parts.

He left his estate in such a condition that his will can be fully carried out by considering the devise in question to be of four separate and distinct parts. If by any unforeseen occurrence, there should be a collision between the provision for Mrs. Alston's annuity, and other portions of the will, the former being in conflict with the principal scope and intent of the testator as deduced from the whole instrument, must give way to such general purposes.

My conclusion is that it was not the intent of the testator, nor the effect of the language used in the will, when considered as a whole; to create a trust by which one-half of his estate was to re-

main entire in the hands of the trustees until after the determination of the annuities granted to his children.

On the contrary, that his intent and the effect of the devise made, was to vest the fund in the trustees in four distinct and equal shares; each of which was chargeable with a single annuity, and vested on the death of the child to whom such annuity was payable. If Mrs. Alston survived her husband, her fourth part was to vest in her in possession. If Henry and James died after their wives, their respective fourth parts would be divisible upon their deaths.

And in no event would either share, or any part of either, remain suspended, so as not to be alienable, beyond two lives in being.

In order to give due effect to the other parts of the will, the discretion of the trustees to increase the annuities, must be restricted within the bounds of the income of the respective fourth parts of the trust fund.

SECOND. The next objection to the validity of the will, is that the trust for accumulation of three-fourths of the one-half of the estate for the benefit of unborn children is illegal, because the persons are not named during whose minority the accumulation is to commence, and at the expiration of which it is to terminate; and because its commencement is postponed too long.

The trust does not commence until a month after the death of the testator, and therefore it does not fall within the first subdivision of the respective sections relative to accumulations of real and personal estate. (1 R. S. 726, § 37, ibid. 773, § 3.)

Considered with reference to the second subdivisions of those sections, it commences within the time prescribed; for as to each fourth part, it must commence, if ever, within the lives of the two annuitants who successively receive their annuity from such fourth part. It must necessarily commence during the minority of those for whom it is provided, because they must be in life before there is to be any accumulation, and it terminates on their becoming of full age. The question is, whether all the persons for whom it is intended, must be living at its commencement. As to their being named, I think the designation of a

class of persons is within the statute, and that it requires no other description.

The direction in this will is to accumulate for the benefit of *the children or other issue* of the respective sons and the daughter. The word *equally* refers to the fourth parts, not to the children or issue.

Thus in Mrs. Alston's case, at the outset of the accumulation, it would be for the benefit wholly of her child then living. On the birth of another child, it would be from thence for the benefit of both children, and so on upon an increase in their number. Then when the eldest became of full age, he would receive all that had accumulated for him, and cease to participate for the future.

It occurred to me at first, that this construction would interfere with the spirit of the statute, by permitting a succession of accumulations, and extending the time in which they would progress. I do not perceive that the mere succession of them is objectionable, if they all fall within the prescribed limit as to time, so as not to suspend unduly the absolute ownership or power of alienation.

In this case the time falls far short of what the statute permits, because the accumulation is not only to commence within two lives in being, but it is to terminate with those lives. The respective trust funds vest absolutely and become divisible, and the entire trusts cease, with those two lives. In Mrs. Alston's share they will cease on the death of her husband, which may occur while she lives, and thus the suspension continue for one life only, But I will proceed to view it as a general proposition, applicable to all cases arising under the second subdivision of the sections in question.

The accumulation may be postponed in its inception to any point of time within the compass of two lives in being, and then may continue till the end of the minority of the beneficiary. Suppose in this instance, the direction had been for an accumulation during the minority of the youngest child of Mrs. Alston, to commence at its birth, and to be for the benefit of all her minor children or issue then living, so long as they continued under age. It may be said that this would be void for the uncertainty

of the time of its commencement. To this I might answer, it could be made certain by relation, for if she had one child, there would infallibly be a youngest child. There might, I admit, be a difficulty in going back to begin the accumulation after the youngest child was ascertained by events subsequent to its birth. I put the case however, merely to illustrate the question of time ; and a direction to begin an accumulation twenty years after the testator's death, if A. and B. so long lived, would illustrate it equally as well. And I think either hypothesis shows that a trust of this kind may be made quite as enduring, where there is to be no succession of parties entitled, as where it is to commence with the birth of children and to embrace all the afterborn children of the *cestui que vie.*

There is a difference in this, that in the cases supposed, the accumulation itself will continue for a less period, and the intermediate rents or income will vest in other parties; but the ownership of the estate will be suspended in each instance, to the end of the accumulation.

It appears by the revisers notes accompanying the introduction of these provisions to the legislature, that they intended to allow of accumulations for the benefit of infants entitled to the next eventual estate. (3 Rev. Stat. 578, 2d ed.)

This object, and nothing more is attained by the devise in Mr. Mason's will, and there is the further merit in the provision, that it makes the distribution of the benefit of the surplus income of each of the three-fourth parts among the issue of the respective annuitants, as nearly equal as is consistent with a valid bequest under the statute.

I feel much diffidence in the disposal of the point, but my conviction is clear, that the trusts for accumulation are valid.

THIRD. It is objected that the power of alienation is suspended for one month from the testator's death, and the devise is therefore void.

This would undoubtedly be the consequence, if there were an absolute suspension for a month, without reference to lives in being. But there is no such suspension here. The accumulation is not to commence till after a month ; but if Mr. and Mrs. Alston, for instance, (or Mr. Alston alone,) had died within the

month, the accumulation would never have commenced at all as to that fourth part. So if James Mason and his wife had died the next day after the testator, another one-fourth would at that instant have vested absolutely in possession. The duration of the trust as to each fourth part of the fund is dependent entirely upon the continuance of lives, and not upon any fixed period of time.

FOURTH. It is also made an objection to the devise, that a trust for the payment of annuities, is not authorized by section 55 of the revised statutes relative to uses and trusts.

The point has been held otherwise in several cases. (See *Hawley* v. *James*, 16 Wend. 61, per Nelson, Ch. J., and Maison, Senator; and in the same case, per the Chancellor, 5 Paige, 321; *De Peyster* v. *Clendining*, 8 Paige, 295; S. C. *nomine Bulkley* v. *De Peyster*, 26 Wend. 21.)

FIFTH. As to the objections to the direction for distributing the surplus income, while the three principal annuitants are without issue.

There is no uncertainty, in my view of it, either as to what is to be divided, who is to receive it, or on what contingency it is divisible. I refer to what I have said in discussing the principal point in controversy.

In regard to George Jones, who in this instance is a beneficiary of the trust, the only consequence is that he takes a legal and not an equitable estate, in his proportion of the surplus to be distributed. (*Murray* v. *Murray*, before the Chancellor, decided April 19, 1842.)

SIXTH. The devise of John Mason, Junior's share after his death, is said to be both uncertain and incomprehensible.

There is evidently some omission of words, and perhaps a transposition of other words in this clause of the will; but having regard to the objects of the testator and the subject matter, it is perfectly intelligible.

SEVENTH. It was also made a point, that the complainant, in case the trusts of the will were adjudged to be valid, is entitled to a decree for the permanent continuance of the annuity to him, as enlarged by the trustees.

As to this, there is no foundation laid for it in the bill. The court therefore has nothing to do with it in this suit.

The bill must be dismissed, with costs to the infant defendants, and to such of the other defendants as opposed the claims made by the complainant.

