BULKLEY and others, *appellants*, and DEPEYSTER, ad-ministrator &c., of John Clendining deceased, *re-spondent.*

Where a testator by will bequeathed annuities to five of his children, and directed that on the death of either without issue, the annuity be-queathed to the child dying should be equally divided among the *survivors ;* but if there was issue, then the annuity to be paid to such issue *during* the life-time of the wife of the testator, and on her death the *principal* of such annuity; that upon the decease of any of the five children, *after* the death of the wife of the testator, a like portion of the *principal* of his estate should be paid to the issue of the child so dying ; and that a final distribution and settlement of his estate among his grand-children should be had immediately after the death of the *survivor* of his children : IT WAS HELD that the vesting in possession of the several portions of the estate was not postponed beyond two lives in being at the time the will took effect, and consequently that the will was a valid and operative instrument within the provisions of the statute.

APPEAL from Chancery. John Clendining, by his last will and testament, bearing date 22d July, 1829, after making a specific bequest to his wife, gave all his real

1841.

Bulkley
v.
Depeyster.

and personal estate to trustees, and directed them to convert the whole into money, and from the proceeds of the same to pay to his wife an annuity ; to pay his daughter Margaret, the wife of Horace Bulkley, five dollars, as and for her full and entire portion of his estate, he having already advanced and paid on account of her and her family a much larger sum than the portions of any of the other of his children would amount to ; to his daughter Sarah, the wife of William Hogan, yearly, and every year during her natural life, the sum of $20,000 ; to his son John a like sum yearly ; to his son James a like sum yearly ; to his daughter Jane $40,000 yearly, and to his daughter Letitia $40,000 yearly. (So the will was drawn, but it was understood on the argument that the testator meant to give the *interest* only of the sums specified.) Then comes the following clause :

" In case either of my said children, Sarah, John, James, Jane or Letitia, should die without lawful issue, I order and direct that the yearly sum or sums of money hereby bequeathed to the child so dying be equally divided among the survivors of them, and if the child so dying shall leave lawful issue, I then order and direct that the yearly sum or sums hereby bequeathed to the child so dying be paid to his or her child or children during the life time of my beloved wife, and upon the death of my beloved wife I further order and direct that the yearly sum or sums of money hereby bequeathed to her be in like manner divided among my said children and legal representatives, it being my will and intention hereby declared that my said children Sarah, John, James, Jane and Letitia, should during their lives, have and enjoy the whole income and interest of my estate, (subject to the said life annuity to my wife and the provision above mentioned,) but no part of the principal thereof ; and that the principal of my estate should be equally divided among their lawful issue, the children of each taking the share or portion which their parent would have been entitled to if the principal had been bequeathed

to my said children Sarah, John, James, Jane and Letitia. I do further order and direct that after my beloved wife shall have departed this life, if any of my said children Sarah, John, James, Jane and Letitia, should then be dead leaving lawful issue, then that the share or proportion of the principal of my estate which the child so dying would have been entitled to if the principal had been bequeathed to my said children, be paid to his or her child or children; and that upon the death of any of my said children after the death of my said wife, a like portion of the principal of my estate be paid to his or her children, *and that a final distribution and settlement of my estate among my grand-children according to this my will and intention as herein before expressed, be made immediately after the death of the survivor of my said children.*"

The testator died in January, 1836. The trustees named in the will declined to act. The will was proved and letters of administration, with the will annexed, were granted to Frederick Depeyster, who, in March, 1837, filed a bill in chancery, for the purpose of determining the true construction and validity of the several provisions of the will, and the rights of the parties named therein, and of ascertaining and settling the powers and duties of himself as administrator. The *Chancellor* made a special decree, passing upon a great variety of matters growing out of the provisions of the will and the situation of the parties affected, and amongst other things, decreed : 1. that the power to sell the real estate and convert it into personalty was valid as a power in trust, under the provisions of the Revised Statutes ; 2. that the limitation over of the shares of the children of the testator to his grand-children, was valid, the absolute ownership and the right to the immediate enjoyment by the grand-children being suspended only for *two lives,* viz : the lives of the *widow* and of the *parent* of the grand-child or grand-children; and 3. that the administrator proceed and carry into effect all the trusts of the will. From the above portions of the decree an ap-

Bulkley
v.
Depeyster.

1841.

peal was taken to this court. The case here was argued by :

*J. L. Mason and G. Wood*, for the appellants.

*W. Hogan*, for the respondent.

*Points submitted and argued on the part of the appellants:*

I. The design of the testator was, that his children should enjoy the income of a large portion of his estate in unequal portions, viz :—Jane and Letitia each taking two-sevenths of a portion of the income, and the others, each one-seventh thereof ; and that the income of the surplus should be enjoyed by them in equal portions.

II. The testator designed that the principal of his estate should on the death of all his five children be divided among their issue—the issue representing the parents, and in their representative capacity taking equal portions, viz : the same as the parents would have taken, if the whole principal of the estate had been given to them equally.

III. To carry out the above plan it was necessary, and was within the scope and design of the testator, that the entire principal of his estate should be kept together as an *entirety*, during the lives of all his five children, and the last survivor of them.

IV. Such being the general intent of the testator, any particular intent, inadvertently expressed in the will, and apparently inconsistent with it, must give way.

V. The effect of this disposition, which was valid at the time the will was drawn, would be to suspend the absolute alienation in fee of the entire estate, for a longer period than two lives in being at the death of the testator, viz :— for six lives then in being, and is void under the Revised Statutes.

VI. The limitation in case of a failure of issue of any of the children over to the survivors, clearly suspends the power of alienation of each and every share, (supposing it

capable within the general design of the testator, of being detached from the entire fund,) for a longer period than two lives in being at the death of the testator.

VII. The devises to the issue, and to the survivors on failure of issue, are both essential limitations, and they are so complicated and connected together, that if the limitation to the survivors should be dropped, it would work a distribution of the estate which the testator never designed, and the whole is therefore inoperative and void.

In support of the above points, the following authorities were cited : 1 *R. S.* 773, § 1, 1*st ed.*, *in connection with page* 723, § 15, *and page* 730, § 63, 65. *Coster* v. *Lorillard*, 14 *Wendell*, 266, *and particularly pages* 305, 312, 334. *Hawley* v. *James*, 16 *Wendell*, 61, *and particularly pages* 120, 121, 126, 133, 178, 250, 252. *Darling* v. *Rogers*, 22 *Wendell*, *page* 483, *and particularly* 495. *Cruise Dig. Tit. Devise, Chap*. ix, § 6, *page* 158.

After advisement, the following opinion was delivered :

*By the* CHIEF JUSTICE. The appeal in this case is limited to three questions, passed upon, among many others, by the Chancellor, in giving a construction to the will of Mr. Clendining, on behalf of the administrator : The *first* in respect to the clause in which the testator directs that all his real and personal estate, (after payment of his debts and funeral charges,) shall be converted into money for the purpose of investment and distribution. This was held to be valid as a power, under the Revised Statutes. The *second*, in respect to the clause which limits the income of the estate in certain portions to the children for life, and gives the principal to the grand-children on the decease of the parents. This was held to be valid, as not suspending the power of alienation beyond the period of two lives allowed by law ; and the *third*, respects that part of the decree in which the court below appointed Mr. Depeyster a trustee to carry into execution the several valid trusts in

Margin note:

1841.

Bulkley
*v.*
Depeyster.

1841.

Bulkley
*v.*
Depeyster.

the will, the three trustees named by the testator having declined to act.

The points presented on the argument on the part of the appellants, are mainly confined to a consideration of the second question: it being insisted by the counsel, that the limitation, upon a true construction of the will, suspends the power of alienation beyond two lives, and is therefore void, leaving the real estate to descend to the heirs according to the statute of descents, and the personalty to be distributed to the next of kin.

The will, as a whole, I think, well drawn, and an extremely plain one ; and though there may be a little obscurity in respect to the clause in question, it is not so obscure as to raise a reasonable doubt as to the intent of the testator. He had six children—four daughters and two sons. Mrs. Bulkley, the wife of the appellant, was passed by with a nominal legacy, herself and family having already received advances exceeding the portions of the other children. The estate is then divided, substantially, into *seven parts.* Sarah, the wife of Mr. Hogan, and the two sons, John and James, each to have the income of one part, the two other daughters the income of four parts, (making in all, seven,) for their natural lives. The testator then provides, that in case of the death of any of his children named, *without issue,* the yearly sum bequeathed to the child so dying shall be equally divided among the survivors ; and if the child dying leave lawful issue, then the yearly sum bequeathed to the child so dying to be paid to his or her child or children during the life of his wife: it being his intention, he adds, that his children named should have and enjoy during their lives, the whole income of the estate, (subject to the annuity granted to his wife,) but no part of the principal ; and that the principal should be equally divided among their lawful issue, the children of each taking the share or portion the parent would have been entitled to, if the principal had been bequeathed to him or her. Then comes the clause bearing more directly upon the

question before us : " I do further order and direct, that after my beloved wife shall have departed this life, if any of my said children, (naming them,) shall then be dead, leaving lawful issue, then that the share or proportion of the principal of my estate which the child so dying would have been entitled to, if the principal had been bequeathed to my said children, be paid to his or her child or children ; and that upon the death of any of my said children after the death of my said wife, a like portion of the principal of my estate be paid to his or her children ; and that a final distribution and settlement of my estate among my grand-children, according to this my will and intention as herein before expressed, be made immediately after the death of the survivor of my said children."

The only obscurity in respect to any part of the will arises out of this latter clause, which looks like an intent to postpone the distribution of the principal of the income of each child among the grand-children, till the death of the last survivor, which would suspend the absolute ownership for the lives of the widow and five children. But whatever may have been the meaning intended, it is quite too vague and uncertain to supersede the previous clear and positive declaration of the testator in the matter. He has, in direct terms, declared, that if any of his children shall be dead, at the decease of his wife, leaving issue, that then the share or portion which would have belonged to such child if the principal had been bequeathed to him or her, shall be paid to the grand-children. He had previously provided for their receiving the income during the life of his wife ; and what makes the meaning still more clear, he goes on to say, that upon the death of any of his children after the decease of his wife, a like portion of the principal shall be paid to his or her children. The testator has thus carefully provided for paying the income of the deceased parent to his or her children, where the death happens previous to the death of his wife, but confines it in terms to a period during her life. No provision is

1841.

Bulkley<br>v.<br>Depeyster.

made for a like payment after her death, which would have been a most natural one, if contemplated by the will. Why confine the payment of the income to the grand-children in terms during the life of the widow, if intended to postpone the distribution of the principal till the death of the last surviving child ? Or why not have provided for payment of the income down to the period of the final distribution claimed ? The true reason is, that provision was made by the testator for payment of the principal to the grand-children of deceased parents immediately on the death of his wife, and so successively as the parents afterwards died, down to the death of the last survivor, when the distribution among the grand-children will have become complete—which is all, probably, that was meant by the general phraseology of the last three lines of the clause referred to.

The consequence of the above construction is, that the vesting and enjoyment in possession of each portion of the estate devised, is not postponed beyond two lives in being at the time the will took effect: namely, the lives of the wife and of the child to whom the portion is given ; at the farthest, on the death of these two, the grand-children take an absolute interest in the share.

I concur, therefore, in affirming the decree below.

On the question being put, *Shall this decree be reversed ?* the members of the court divided as follows :

*In the affirmative :* Senators Dixon, Lee and Peck—3. *In the negative :* The President of the Senate, the Chief Justice, and *Senators* Denniston, Furman, Hawkins, Hopkins, Hunter, H. A. Livingston, Nicholas, Platt, Rhoades, Scott, Strong, Verplanck and Works —15.

Whereupon the decree was Affirmed.