Burrill *v.* Sheil.

---

Same Term.          *Edwards*, Justice.

BURRILL and WOOLSEY, ex'rs of Towning, *vs.* SHEIL and others.

As a general rule, where several persons are named as trustees, and any of them refuse to accept, the estate will vest in those who do accept; and the trust can be executed by them.

A court of equity will not permit a devise in trust, which is valid in other respects, to fail, for the want of a trustee.

If the refusal of trustees to accept, is the only obstacle to the execution of the trust, the court will supply the defect, by appointing new trustees.

Where a testator, by his will, directs an investment of a certain amount to be made

Burrill v. Sheil.

in England, the supreme court has no power to divert the investment from that country, and to direct the same to be made here; except with the assent of all the persons interested therein.

Where a will directs that the real estate of the testator shall be converted into personal property, and gives the same to certain persons for life, with limitations over to others, the will must, upon the principles of equitable conversion, be governed by the rules of law applicable to limitations of personal property.

Where a testator, by his will, directed the sum of £3000 to be invested for M. H., the interest to be paid to her semi-annually during her life; that at the death of M. H., the interest of the £3000 should be paid to S. F., during her life; and at the death of S. F. the said £3000 was given and bequeathed to the surviving issue of S. F., share and share alike, *to be at their own disposal* as soon as they should respectively and severally have attained the age of twenty-five years ; the interest to be paid to such issue in equal proportions, until that age; and should S. F. die before M. H.; then the £3000 was to be divided, at the death of M. H., among the surviving issue of S. F., share and share alike, as soon as they should respectively attain the age of twenty-five years; the interest to be paid to them, in the meantime, in equal proportions; *Held* that the limitations during the lives of M. H. and S. F. were valid; the absolute ownership of the property not being suspended, during the period of such limitation, for more than two lives in being at the death of the testator.

*Held also*, that the limitation over to the surviving issue of S. F. was valid; the words, " to be at their own disposal," taken in connection with the disposition of the interest, conferring on the surviving issue a vested interest on the death of S. F., or, in case of her dying before M. H., on the death of M. H.; and that there was no suspension of the power of alienation beyond the two lives of M. H. and S. F.

It is a well settled rule in equity, that where a legacy is given to a person to be *paid* at a particular age, or at the end of a fixed time, he takes a vested interest; *debitum in præsenti, solvendum in futuro*.

Where a testator devised and bequeathed to M. A. H. the interest of two-thirds of the residue of his estate, for life, and at her death the said two-thirds of the residue was given to the issue of M. A. H., *nominatim*, to be *paid* to them as soon as they should severally and respectively have attained the age of twenty-five years; the interest on said two-thirds to be paid to such issue until they should respectively and severally have reached that age, or to their issue in case of death, or in case either of them died without issue, then to the survivors; M. A. H. having died before the testator; *Held,* that on the death of M. A. H., her issue took vested interests, and that the bequest to them was valid.

Where a testator bequeathed to E R. the interest upon the remaining one-third of the residue of his estate, for life, and on her death he gave and bequeathed the said one-third to the issue of S. F., as soon as they should have severally and respectively attained the age of twenty-five years; the interest to be paid to them until that age, and in case of death, to the issue, in like manner; *Held,* that the issue of S. F. took vested interests, and that there was no suspension of the absolute ownership for more than two lives in being at the death of the testator.

Burrill *v.* Shiel.

IN EQUITY.    The bill in this cause was filed by the plaintiffs as sole acting executors of the last will and testament of Richard Towning, late of the city of New-York, deceased. The bill set forth that the testator being possessed of a considerable real and personal estate, made and published his last will and testament, in writing, bearing date July 3d, 1840, in the following words :

"In the name of God, amen.    I, Richard Towning, formerly of the parish of Christ Church, in the county of Surrey, in that part of the kingdom of Great Britain called England, late of Aux Cayes, in the island of Hayti, distiller, now in the city of New-York, being of sound and disposing mind and memory, do make and publish this my last will and testament, in manner following, that is to say :

*First.* I give, devise and bequeath all and singular my estate, property, and effects, real, personal, and mixed, of every name, nature and description, whatsoever and wheresoever situate, whereof I may die siesed or possessed, or to which I may be entitled at the time of my decease, unto my executors hereinafter named, and to the survivors and survivor of them, to have and to hold the same however upon the trusts and for the uses and purposes hereinafter mentioned and expressed.    And I hereby invest my said executors, and the survivors and survivor of them, with full power and authority to sell and convey, and on sale to make valid deeds and conveyances thereof, of all or any part of my said estate and property, real or personal, as hereinafter directed and provided.

*Second.* It is my will, and I do hereby direct my executors, as soon after my decease as practicable, to sell and convert into cash, all and singular my estate, property, and effects, (not herein specifically devised,) and after payment of my just debts and funeral expenses, to appropriate, use and dispose of the rest, residue and remainder of the proceeds or avails of my estate as hereinafter directed.

*Third.* I will and devise that three thousand pounds sterling be invested in England at good and lawful interest, on good and sufficient security, in the joint names of Richard Sheil,

Esquire, merchant, of Liverpool, and Geo. Ballard, Esquire, merchant of London, as trustees for Mary Husband, formerly of the island of Jamaica, late of Aux Cayes, in the island of Hayti, now in New-York, the interest of said three thousand pounds sterling, to be paid semi-annually unto the said Mary Husband, during her natural life, for her own sole use and benefit, and to be paid to her by said trustees only on the authority of the receipt signed by her own hand. And I will and desire that twenty pounds sterling be paid quarterly, making one hundred and twenty pounds sterling per annum, out of my estate, by my executors of this my last will and testament, until the said investment of three thousand pounds sterling be effected, and the first payment thereon become due, be actually paid to the said Mary Husband ; and at the death of the said Mary Husband I will and bequeath the interest of the said three thousand pounds sterling to my sister, Sarah Fisher, formerly Sarah Towning, during her natural life, for her own sole use and benefit, independent of her husband, his engagements or debts, and to be paid to her only on the authority of her own receipt signed by her own hand. And at the death of my said sister, Sarah Fisher, I give and bequeath the said three thousand pounds sterling to the surviving issue of my said sister, share and share alike, to be at their own disposal as soon as they shall have respectively and severally attained the age of twenty-five years. The interest to be paid to them, the issue of my said sister, Sarah Fisher, in equal proportions, or to some person or persons selected by the aforesaid trustees, in their behalf, until they shall have respectively and severally attained the age of twenty-five years as aforesaid ; and should my said sister, Sarah Fisher, die before the aforesaid Mary Husband, then the said sum of three thousand pounds sterling is to be divided, at the death of the said Mary Husband, among the surviving issue of my said sister, Sarah Fisher, share and share alike, as soon as they shall have respectively attained the age of twenty-five years, the interest to be paid to them in the meantime, in equal proportions aforesaid.

*Fourth.* I give and bequeath to the aforesaid Mary Husband,

Burrill *v.* Shiel.

my gold hunting watch and gold neck chain, or guard, thereto attached, or any other watch with which it may be replaced. And I also give and bequeath to the said Mary Husband, my portrait, and all other paintings in my possession at the time of my death.

*Fifth.* I will and bequeath unto Marie Louise, commonly called Palmyra, Marie Rose, commonly called Hersilie, and Ann Francoise, commonly called Loretta, natural children of the late Valentine Boyen, commonly called Monbeau, deceased, all of the city and parish of Aux Cayes, in the island of Hayti, the sum of six hundred pounds sterling each, to be paid to them by my executors, in part or in whole, as soon as possible after my death; and in the event of the death of the said Marie Rose, Marie Louise, and Ann Francoise, or either of them, to their surviving issue, share and share alike, or in the event of them, the said Marie Rose, Marie Louise and Ann Francoise, leaving no issue, to the survivors or survivor of them, the said Marie Rose, Marie Louise and Ann Francoise, share and share alike. And I will and desire that my executors remit the said bequests to the said Marie Rose, Marie Louise, and Ann Francoise, through the firm of N. D. Roberts and company, merchants of Aux Cayes, or their successors, or to some other respectable English firm established at the said city of Aux Cayes, for the immediate use and benefit of the said Marie Rose, Marie Louise, and Ann Francoise, or their issue in case of death, as aforesaid.

*Sixth.* I will and desire that in the event of my present black servant, Raphael Colds, being in my service at the time of my death, that all my wearing apparel be given to him for his own sole use and benefit; and I will and bequeath moreover, to him, the sum of five hundred dollars of lawful money of the United States of America, to be paid to him by my executors, as soon as possible after my death; but should the said Raphael Colds have left my service before my death, this bequest is then to be of no avail, and is to be null and void to all intents and purposes.

*Seventh.* I will and bequeath to each of my executors to

this my last will and testament, the sum of one hundred dollars, lawful money of the United States of America, for the purchase of some token or memento of my regard to them individually, the choice of which I leave to themselves.

*Eighth.* It is my will, and I hereby direct my executors, after paying the before mentioned legacies and bequests, to invest the rest, residue and remainder of my estate in England, at good and lawful interest, on good and sufficient security, in the joint names of Richard Sheil, Esquire, merchant, of Liverpool, and George Ballard, Esquire, merchant, of London, as trustees, for the purposes hereinafter mentioned.

*Ninth.* I will and bequeath to my sister Mary Ann Hughes, formerly Mary Ann Towning, the interest of two-thirds of the said residue and remainder of my estate, for and during her natural life, for her own sole use and benefit, independent of her husband, his engagements and debts; the said interest to be paid to her on the authority of her own receipt, signed by her own hand. At the death of my said sister, Mary Ann Hughes, I will and bequeath the said two-thirds of the said residue and remainder of my estate to the issue of my said sister Mary Ann Hughes, namely, Emma Hughes, Richard Hughes, Mary Ann Hughes, Maria Hughes, and Sarah Ann Hughes, share and share alike, to be paid to them as soon as they shall have respectively and severally attained the age of twenty-five years. The interest on said two-thirds of the said residue and remainder of my estate, to be paid to them, or to some other person selected by the aforesaid trustees in their behalf, in equal proportions, until the said issue of my said sister, Mary Ann Hughes, shall have respectively and severally attained the age of twenty-five years, or to their issue in case of death; and in the event of the said Emma Hughes, Richard Hughes, Mary Ann Hughes, Maria Hughes and Sarah Ann Hughes, dying without issue, to the survivor or survivors of them, the said Emma Hughes, Richard Hughes, Mary Ann Hughes, Maria Hughes, and Sarah Ann Hughes, share and share alike.

*Tenth.* I will and bequeath to my sister Elizabeth Ryan, or Rayne, formerly Elizabeth Towning, the interest of the re-

Burrill *v.* Sheil.

maining one-third of the said residue and remainder of my estate for and during her natural life, for her own sole use and benefit, independent of her husband, his engagements or debts, the said interest to be paid only on the authority of her own receipt, and signed by her own hand.   And at the death of my said sister Elizabeth Ryan or Rayne, I give and bequeath the said one-third of the said residue and remainder of my estate to the issue of my sister, Sarah Fisher, formerly Sarah Towning, as soon as they shall have respectively and severally attained the age of twenty-five years, the interest thereof to be paid to them or to some proper person in their behalf, selected by the aforesaid trustees, in equal proportions, until they shall have respectively and severally attained the age of twenty-five years as aforesaid, or in case of death, to the issue in like manner, or in default of issue of my said sister Sarah Fisher, share and share alike.   And I will and desire that until the aforesaid residue and remainder of my estate, willed and bequeathed as aforesaid, can be invested in England as aforesaid, that one hundred pounds sterling be paid by my executors to each of my said sisters, Mary Ann Hughes and Elizabeth Ryan or Rayne, in semi-annual payments.

*Eleventh.*   I nominate and appoint my friends Richard Sheil, merchant of Liverpool, George Ballard, merchant of London, George P. Burrill, gentleman of New-York, late of the island of Jamaica, and Edward John Woolsey, sugar refiner of New-York, executors of this my last will and testament; and I hereby revoke and annul all former wills and codicils by me made."

The bill stated that the testator died on the 4th of November, 1843; that the plaintiffs caused the said will to be opened, and thereupon caused notice to be given to the said Richard Sheil of Liverpool, and George Ballard of London, of the contents thereof, and of their being named trustees and executors therein.   Also that such notice was acknowledged by them, and they by letter declared that they would not qualify, nor aid in proving the said will, nor act in any way as trustees or executors; and that they never have so qualified, acted, or aided.

Burrill v. Sheil.

That after the refusal of Sheil and Ballard to act, the plaintiffs·duly proved the will in the office of .the surrogate of the city and county of New-York, and took possession of the real and personal estate of the testator more than sufficient to pay all his just debts, legacies, and funeral expenses. That they had sold the greater portion of the real estate, and given conveyances therefor; and that out of.the assets they had paid all the debts of the testator, and his funeral expenses, and satisfied the specific legacies. That Mary Ann Hughes, the sister of the testator, died on the 11th of November, 1842, several months previous to the death of the testator; and that Maria Hughes, one of her children named in the will, died about six months before the death of her mother. That at the time of her death she was under the age of twelve years. That all the other legatees named in the will are still alive. The bill then stated that inasmuch as the property and estate of the testator was in a train to be all reduced into cash, and inasmuch as Sheil and Ballard peremptorily refused to act as executors and trustees, so that the transmission of the assets of the estate and the investment thereof in England, was attended with difficulty, the plaintiffs desired the guidance of a court of equity in relation to the performance of the duties necessary or required under the will, and the investment of the estate thereunder. That the refusal of their co-executors to act, greatly embarrassed the plaintiffs in the premises; while parties beneficially interested raised embarrassing questions; as for instance: 1. That a trustee or trustees cannot be named and appointed in the place or stead, and perform the duties which the said testator required of the said Richard Sheil and George Ballard, except by a court of equity. 2. That the trustee or trustees who may be so named and appointed in a court of equity, in the place and stead, and to perform such duties last aforesaid, need not necessarily reside in England, but may be resident in the state of New-York, and that the plaintiffs may be such trustees. 3. That the investments of the three thousand pounds sterling, and of the residuary estate contemplated by the will, might be made within this state, and that the doing so would be beneficial to

the parties in interest.   4.  That the limitation over in the will, as to the said £3000, on the deaths of Mrs. Mary Husband and Mrs. Sarah Fisher, are too remote, under the provisions of the revised statutes of the state of New-York, where it goes to restrict the disposal of it by the issue of the said Sarah Fisher, until they attain their ages of twenty-five years.   5.  Also that as to the bequest of the two-thirds of the residue out of which Mrs. Mary Ann Hughes was to have had the income for life, the limitation over to the issue of her children, is too remote, and is void by the statute of the state of New-York.   6.  Also that the children of Mrs. Mary Ann Hughes, some of whom are of age, and others not, claim that the plaintiffs should send over and pay to them the present and accruing income of the residue, which will come to them at their ages of twenty-five years, without any delay, even though no guardian of the estate of those who are under age has been appointed.   While it is an open question as to who should select a person to receive the said income and pay it to any or every of such children of the said Mary Ann Hughes, now that the said Richard Sheil and George Ballard refuse to act.   Also that questions arise in consequence as well of the death of the mother as of her child Maria Hughes.   7.  Also that as to the bequest of the one-third of the residue of it, of which Mrs. Elizabeth Ryan, or Rayne, has the income for life, the limitation over to the issue of the children of Mrs. Sarah Fisher, is too remote, and void by the statutes of this state.   8.  That whether investments are made in the United States or in England, a court of equity should specify the species of security in which the investments should be had and made.   9.  That this court is competent to enforce the power in the will to sell and invest the moneys in England while executors are here, and trustees are appointed who will be resident within the jurisdiction of this court.   And also that this court has power to authorize such trustees to appoint an agent, resident in England, to invest and pay, or to receive and pay.   10.  That the plaintiffs being what are called "qualified executors" only, may withdraw from the trusts of the said will, should they elect to do so, with their costs, charges, commis-

Burrill *v.* Sheil.

sions and all just allowances for payments and expenses. Also that the court on the petition or consent of the parties in interest coupled with the approval, desire, or wish of the plaintiffs, would substitute one or more persons resident within the jurisdiction, to carry out the trusts of the will; and could, and would, in that case, direct and order the plaintiffs to hand over all properties, estate, papers, deeds, writings and effects, less the plaintiffs' just costs, charges, commissions and allowances. 11. That there are other points arising on the said will which require the plaintiffs, as acting executors aforesaid, to take the views of this court on the said will, generally as well as particularly. And that, as they are advised, they cannot safely act any further in the matter of the said will, so far as the points above raised or suggested, come up or remain open, without the direction of this court.

The bill then prayed that the above points might be passed upon and adjudged in a decree to be made by this court; that the future position of the plaintiffs, under the will, might be defined, and that they might be allowed all just costs, commissions and expenses. That in case Sheil and Ballard should persist in not taking upon themselves the trusts of the will, then that this court should direct and decree who shall be trustees to act in their place and stead; and that upon the direction and decree of this court being had as to who shall be, or continue to be, such trustees or trustee, such trustees or trustee should be declared entitled to, and have vested in them, all and every the moneys, properties, securities and estate of the testator, less all proper payments, costs, expenses, commissions, &c.; and for general relief. Sheil and Ballard, and the several persons named in the will as legatees, or devisees, were made parties defendants to the bill.

Such of the defendants as appeared put in general answers, submitting their rights to the protection of the court; Rayne and wife admitting that, from the circumstances set forth in the bill, the plaintiffs, as executors and trustees, found the investment of the estate attended with difficulties; but claiming and insisting that the will of the testator was valid, so far as their

rights were concerned.   Thomas Horsey, Emily S. Horsey, and Ellen Fisher, by their answer, admitted that the plaintiffs were justified in asking the direction of the court in the premises; but submitted that if the will, and the trusts therein contained, or any part thereof, were upheld and sustained, and any investment of the proceeds of the testator's estate should be ordered, the same should be made in the state of New-York, where the current rate of interest is seven per cent, instead of being made in England, where the current rate is three to four per cent. The cause was heard on pleadings and proofs.

*C. Edwards,* for the plaintiffs.

*F. S. Kinney,* for the defendants Sarah and Samuel Fisher.

*R. W. Townsend,* for the defendants Samuel W. and Elizabeth C. Fisher.

*M. I. Townsend,* for Thomas and Emily S. Horsey and Ellen Fisher.

*Willis Hall & G. G. Waters,* for Mary Husband, Emma Hughes, Richard, Mary Ann, and Sarah Hughes.

*Merrihew & Wright,* for Eliz. Rayne and Paul Rayne.

EDWARDS, J.   The testator, Richard Towning, by his last will and testament, devised and bequeathed all his estate, both real and personal, to the complainants Burrill and Woolsey, residing in New-York, and the defendants Sheil and Ballard, residing in England, upon certain trusts therein mentioned, and appointed the said trustees his executors.   Sheil and Ballard refused to qualify as executors, or to act as trustees.   The executors were invested by the will with full power, and were expressly directed, to sell the real estate.   They were also directed to invest £3000 sterling in England, in the joint names of Sheil and Ballard as trustees, for certain purposes stated in

the will.   And they were further directed, after paying some specific legacies, to invest the residue of the estate in England, in the same manner:   In pursuance of the power and directions given by the will, the complainants have sold the real estate, and have paid and satisfied the debts and legacies, but they are unable to proceed in the execution of the trusts ; owing to the refusal of Sheil and Ballard to invest the estate in England in their joint names as trustees.   As a general rule, where several persons are named as trustees, and any of them refuse to accept, and to execute the trust, the estate will vest in those who do accept, and the trust can be executed by them.   (*In Re Stevenson,* 3 *Paige,* 420.   *King* v. *Donnelly,* 5 *Id.* 46.)   But in this case one of the trusts in the will can only be executed in the joint names of the persons who have refused to act as trustees.   As regards this provision of the will, a particular trust is vested in Sheil and Ballard, which the complainants cannot execute under the general powers given to them by the will.   The question then arises whether the trust shall fail, or whether this court will supply a suitable trustee.   It is a well settled principle that a court of equity will not permit a devise in trust, which is valid in other respects, to fail for the want of a trustee.   (4 *Ves.* 708.   5 *Id.* 495.   6 *Id.* 656.   8 *Paige,* 295.) And in this case, if the refusal of the trustees to accept is the only obstacle to the execution of the trust, the court should supply the defect.   It was suggested, on the argument, that the direction to invest in the joint names of Sheil and Ballard was of the essence of the trust, and that, unless there were such an investment, the trust would fail *in toto.* . I do not so construe this provision of the will.   The direction to invest in the joint names of Sheil and Ballard was evidently not given because of any particular confidence which the testator reposed in them, rather than in the complainants.   The chief object which he had in view was to invest in England ; and it was merely for convenience that he directed the investment to be made in the names of Sheil and Ballard, as they resided there.   But even if he had particular reasons why he wished the investment to be made in their names, rather than in the names of any other

persons, and they fail to act, still there would not be a sufficient reason why the trust should fail. It is enough to warrant the court to interfere, that there is a trust which must fail for the want of execution by the trustees named. And even where a power was vested in the trustee named, to select such persons as "*he thought most deserving,*" it was held that the non-exercise of the power could not prevent the court from giving the property to the objects of the trusts. (*Brown* v. *Higgs*, 4 *Ves.* 708, *and note a., Sumn. ed.* 5 *Ves.* 495, *S. C.* 1 *Story's Eq. Jur.* § 98.) This case is clearly one in which a court of equity ought not to permit the trust to fail by the refusal of the trustees to act; but should supply their place by the appointment of trustees. Having come to this conclusion, there can be no doubt that the complainants are the proper persons upon whom the selection should fall. Their respectability and responsibility would, in themselves, furnish a sufficient reason for their appointment. But, in addition to these recommendations, they have been selected as executors and general trustees by the testator, and while they continue in that capacity, they alone should be authorized to execute all the trusts contained in the will.

As to the questions which were raised upon the argument in reference to the power of this court to divert the investment from England, there is one conclusive answer; and that is, that such a change could only be made with the assent of all persons interested. But inasmuch as many of the parties in interest are infants, and are not within the jurisdiction of the court, the investment must be made in pursuance of the directions contained in the will. (*See Wood* v. *Wood*, 5 *Paige*, 596.)

The next subject for consideration is the construction which is to be given to the will. As no questions were raised as to the legality of the trusts, I shall assume that they are valid. (*See Gott* v. *Cook*, 7 *Paige*, 521, 538; *De Peyster* v. *Clendining*, 8 *Paige*, 305; *S. C.* 26 *Wend.* 21.) The limitations contained in the third, ninth and tenth sections, are the only parts of the will in reference to which any doubt was expressed. The will directed that the real should be converted into personal

Burrill v. Sheil.

estate. It follows then, according to the principles of equitable conversion, that the will must be governed by the rules of law applicable to limitations of personal property; and by those rules the absolute ownership cannot be suspended by any limitation whatever contained in a will, for a longer period than two lives in being at the death of the testator. (1 *R. S.* 773, § 1.) I shall consider these questionable sections in their order.

I. Is the power of alienation suspended for more than two lives in being at the death of the testator, under the provisions of the third section of the will? The limitations during the lives of Mrs. Husband and Mrs. Fisher, are unquestionably valid; the absolute ownership of the property not being suspended during the period of such limitations, for more than two lives in being at the death of the testator. The only question which arises upon this section of the will, is as to the limitation over to the surviving issue of Mrs. Fisher. By that limitation the principal sum of £3000 sterling is given to the issue of Mrs. Fisher, to be at their own disposal as soon as they shall have, respectively. and severally, attained the age of twenty-five years; the interest, in the meantime, to be paid to them. And in case of the death of Mrs. Fisher before Mrs. Husband, then the said sum of £3000 is to be divided "at the death" of Mrs. Husband, amongst the surviving issue of Mrs. Fisher, as soon as they shall have respectively attained the age of twenty-five years. The words "at the death," were undoubtedly intended to mean *after the death*, and should be so construed.

Do these provisions of the will suspend the absolute ownership of the property beyond the lives of Mrs. Husband and Mrs. Fisher? It is a well settled rule in equity that where a legacy is given to a person to be *paid* at a particular age, or at the end of a fixed term, he takes a vested interest—*debitum in presenti solvendum in futuro*. (*Jackson* v. *Jackson,* 1 *Ves. sen.* 217. *Gedney* v. *Vaughan,* 2 *Bro. P. C.* 254. *Bolger* v. *Mackell,* 5 *Ves.* 509.) And even when there was a bequest to a person *when* he should have attained the age of twenty-five, and the testator empowered his executors. and trustees to place the money at interest, which interest he directed to be applied

at their discretion for the education of the legatees, it was held that he took a vested interest. And the court considered the disposition of the interest to be an indication of the testator's intention that the legatee should, at all events, have the principal. (*Fornereau* v. *Fornereau,* 3 *Atk.* 645. *Hoath* v. *Hoath,* 3 *Bro. C. C.* 4. *Hanson* v. *Graham,* 6 *Ves.* 239.) In the case now under consideration the principal is given to the surviving issue of Mrs. Fisher, immediately on her death, to be at their own disposal as soon as they shall respectively attain the age of twenty-five years; and, until that age, the executors and trustees are authorized to pay over the interest to the said issue. The words, "to be at their own disposal," taken in connection with the disposition of the interest, would, according to the above decisions, confer on the surviving issue a vested interest on the death of Mrs. Fisher; or, in case of her death before Mrs. Husband, on the death of Mrs. Husband. And there is no suspension of the power of alienation beyond the two lives of Mrs. Husband and Mrs. Fisher. (*See Gott* v. *Cook,* 7 *Paige,* 521, 542.)

II. The next inquiry is as to the proper construction to be given to the ninth section of the will.

It appears by the proofs that Mrs. Hughes, the person during whose life the first limitation, contained in this section, was made, died before the testator. Of course the statute has no application to the limitation to her. (1 *R. S.* 773, § 1.) The section of the will now under consideration gives the principal sum of two thirds of the residue of the estate to the issue of Mrs. Hughes, *nominatim,* at her death, to be *paid* to them as soon as they shall severally and respectively have attained the age of twenty-five years. This bequest is governed by the same rules as have been laid down in reference to the third section; and on the death of Mrs. Hughes her children take a vested interest.

The last clause in this section of the will, in its connection, refers to the *interest* accruing before the happening of the event upon which the bequest is to vest in possession; and, in terms, disposes of the interest merely, and not the principal, during

that time. Such undoubtedly is the correct grammatical construction, and such should be the legal construction. Any different construction would be inconsistent with the previous absolute bequest of the principal; and could only be given by supplying words which have not been used by the testator. There is no limitation for more than two lives in being at the death of the testator under this section of the will.

III. The questions which were raised upon the tenth section are, in most respects, similar to those which have been already considered. By this section the interest upon the remaining one-third of the residue of the estate is given to Mrs. Rayne for life, and on her death the principal sum is given to the issue of Mrs. Fisher, as soon as they shall have severally and respectively attained the age of twenty-five years; the interest to be paid to them until that age. The phraseology of this section is, in some respects, different from that of the third and ninth sections. The principal sum is given to the issue of Mrs. Fisher as soon as they shall attain the age of twenty-five years. And, in the mean time, the interest is to be paid to them absolutely. According to the cases above cited, a bequest to a person when he should attain the age of twenty-five years, and an authority given to the executors and trustees to place the money at interest, with a direction to apply the interest to the education of the legatee, was considered a bequest of a vested interest.

The last clause of this section of the will is substantially the same as the last clause of the ninth section, and refers to the interest, and not to the principal. There is therefore no suspension of the absolute ownership for more than two lives in being at the death of the testator, under this section of the will. It appears by the proofs that Maria Hughes, one of the legatees mentioned in the ninth section of the will, died before the testator ; and two questions were raised upon the argument, 1. Whether her legacy lapsed; 2. If it did lapse, who is entitled to it? As these questions are not raised by the bill, and as the rights of the parties cannot be satisfactorily settled upon the case as

---

Burdell *v.* Burdell.

---

it is presented to me, I shall not express any opinion upon either of these questions.

A decree must be entered declaring the construction of the will according to the principles above laid down; and directing that the complainants be appointed trustees in the place of Sheil and Ballard, and be authorized to invest in England, in their own names, all the moneys which were directed by the will, to be invested in England in the names of Sheil and Ballard; and that they be clothed with all the powers as trustees which the said Sheil and Ballard would have been invested with in case they had accepted the trust conferred upon them by the will. And that the costs of all the parties be paid out of the estate in the hands of the executors.

---

SAME TERM.   *Edmonds,* Justice.